UNITED STATES of America, Plaintiff,

v.

PARCEL OF LAND LOCATED AT 19 CROSSMEADOW ROAD EAST LONGMEADOW, MASSACHUSETTS, Defendant.

UNITED STATES of America, Plaintiff,

v.

ONE 1982 JAGUAR XJ–6, VIN. NO. SAJAV 1244 CC 341 157, Defendant.

Civ. A. No. 84–0248–F.

United States District Court,
D. Massachusetts.

June 20, 1988.

Henry L. Rigali, Asst. U.S. Atty., for U.S.

William J. Lyons, Jr., West Springfield, Mass., for Park West Bank.

Edward D. Friedman, Springfield, Mass., for Claimant Toufic Yacteen.

## MEMORANDUM AND ORDER

FREEDMAN, Chief Judge.

Initially, this Court vacates its December 19, 1985 Order consolidating Civil Action Nos. 83–0108–F (involving the seizure of a house) and 84–0248–F (involving the seizure of a Jaguar automobile). The cases will be treated separately by the Court.

This case involves the government's attempt to have this Court declare a 1982 Jaguar automobile it seized forfeited pursuant to 21 U.S.C. § 881. The facts regarding the defendant Jaguar insofar as relevant to this Court's decision today are as follows.

## I. FACTS AND PROCEDURAL BACKGROUND

On June 18, 1982 two friends and international heroin dealers named Tamer Mourad and Adnan Yacteen travelled in the defendant Jaguar from Massachusetts to New York to accomplish an illegal narcotics transaction. In November 1982 Drug Enforcement Administration ("DEA") agents arrested both men and seized the defendant vehicle claiming it as forfeitable because it was used to facilitate an illegal drug transaction. Mourad and Yacteen were charged with numerous drug related offenses. They were convicted and each later sentenced to forty-five years in prison. *See United States v. Mourad,* 729 F.2d 195 (2d Cir.), *cert. denied sub nom.,* 469 U.S. 855, 105 S.Ct. 180, 83 L.Ed.2d 114 (1984).

After seizing the Jaguar, the DEA notified Toufic Yacteen, Adnan Yacteen's father, who was the record owner of the vehicle, and the Park West Bank, which had a security interest in the car, that the Jaguar had been seized. Only Park West Bank formally challenged the seizure before the DEA pursuant to statute and regulations by filing a petition for remission and mitigation. *See* 19 U.S.C. §§ 1602 *et seq.;* 21 C.F.R. §§ 1316.01 *et seq.* From November 1982 through February 1984, Park West Bank vigorously challenged the forfeiture. The DEA denied Park West's Bank petition initially and upon reconsideration.[1] Thereafter, on June 14, 1984 an assistant United States attorney ("AUSA") filed an *in rem* complaint against the Jaguar seeking a judicially authorized forfeiture as allowed under 21 U.S.C. § 881. After the complaint was filed, a warrant and monition was issued. Notice of the seizure and planned forfeiture was personally sent to and received by Toufic Yacteen and the Park West Bank and published in major newspapers.

The Supplemental Rules for Certain Admiralty and Maritime Claims govern forfeiture proceedings brought under 21 U.S.C. § 881. Rule C(6) of the Supplemental Rules states as follows:

(6) The claimant of property that is the subject of an action in rem shall file a claim within 10 days after process has been executed, or within such additional time as may be allowed by the court, and

---

1. The Court does not understand why the DEA adjudicated the forfeiture. 19 U.S.C. § 1610 stated in 1982 that seizures of items worth over $10,000 were to be transmitted to the United States Attorney's Office for forfeiture proceedings in district court. In this case, the DEA initially appraised the Jaguar at $27,000, yet retained the case as if it had jurisdiction over the forfeiture. No records of what actually transpired before the DEA have been submitted. In any event, it is far too late for anyone to now object to what occurred before the DEA five years ago. No one in this case has demonstrated that any objections were filed before the DEA challenging its jurisdiction. Also, any technical violation was cured by the United States Attorney's subsequent prosecution of the forfeiture in this Court.

shall serve an answer within 20 days after the filing of the claim. The claim shall be verified on oath or solemn affirmation, and shall state the interest in the property by virtue of which the claimant demands its restitution and the right to defend the action. . . .

■ Thus, to properly challenge a seizure, a claimant must file a verified claim within ten days after being notified of the complaint and an answer within twenty days thereafter. It is undisputed that no one in this case filed a verified claim in this Court within ten days of the filing of the complaint. On July 13, 1984, the Park West Bank did file an answer to the complaint, but did not defend its claim thereafter. Thus, this case sat dormant for almost three years. In May 1987, Toufic Yacteen, the record owner of the defendant Jaguar, filed a motion to dismiss the complaint, which was the first document received by the Court from Toufic Yacteen. After receiving other paperwork, the Court notified Toufic Yacteen, the Park West Bank and the government that it was scheduling a hearing for April 11, 1988. Park West Bank did not appear at the hearing. At the hearing, the Court asked the government and counsel for Toufic Yacteen a series of questions in an attempt to adjudicate the issues in this now-confusing case.

After the hearing, the Court discovered the existence of procedural problems which would have to be resolved before the substantive issues of the case could be decided. The Court thus issued an order directing all interested parties to respond by way of memoranda by a certain date. Failure to do so would constitute a default. Park West Bank did not respond. Toufic Yacteen and the government, however, did respond to the Court's order and the Court has reviewed their memoranda addressing the procedural issues.

The government has moved for summary judgment claiming that since both Park West Bank and Toufic Yacteen failed to file a verified claim within the requirements of Supplemental Rule C(6), neither of them has standing to challenge the seizure of the defendant Jaguar. Toufic Yacteen challenges this motion and has filed his own motion for summary judgment.

## II. DISCUSSION

While no notice of withdrawal has been filed, the Bank has apparently decided it has adequately secured its financial interest in the vehicle through other means. Since nothing has been filed on behalf of the Park West Bank since 1984 and since it failed to respond to the Court's order, it is no longer part of the case and will not be heard to challenge the seizure. Park West Bank is hereby in default and ordered DISMISSED from the case.

Toufic Yacteen's claim is a bit more difficult. He admits he failed to adhere to Supplemental Rule C(6) yet offers what he considers to be adequate grounds for excusing his technical violation. Yacteen's strongest argument is that in December 1982—while the vehicle was subject to administrative forfeiture proceedings before the DEA—his attorney sent a notice of his right to defend to the AUSA in charge of prosecuting the forfeiture and asked him to submit such notice to the Court at the appropriate time. In a letter dated December 15, 1982 and sent to the AUSA, Yacteen's counsel states that: "I am forwarding you the original claim [of Toufic Yacteen's right to defend] in the anticipated hope that you will file this claim with the appropriate court numbers." *See* Exhibit B to Toufic Yacteen's Supplemental Memorandum docketed June 15, 1988. It is undisputed this notice of claim was never filed in this Court. Furthermore, Yacteen has submitted no evidence that the AUSA in any way acceded to Yacteen's "anticipated hope."

■ For the following reasons, the Court will not excuse Yacteen's procedural default in this case. First, the Court is not sympathetic to Yacteen's attempt to place the fault for his Rule C(6) violation on the shoulders of the AUSA. While the government was on notice in 1982 that Yacteen sought to challenge the seizure, it was not responsible for assisting Yacteen in that challenge by filing papers in Court for him.

*See United States v. United States Currency in the Amount of $2,857.00,* 754 F.2d 208, 215 (7th Cir.1985) (although government knew of individual's intention to challenge forfeiture, it had no duty to advise that individual of any shortcomings in his attempt to do so). Also, there have been no allegations of bad faith on the part of the AUSA. The fact of the matter is that, although the AUSA knew of Yacteen's intention to challenge the forfeiture, this Court was not apprised of that fact until May of *1987,* three years after the case was filed.

Second, even were the Court inclined to accept Yacteen's argument that it was reasonable for him to rely on the AUSA to file the document, there still remains a significant time problem. As mentioned, Yacteen's letter to the AUSA is dated December 15, 1982. This case was not filed until June 1984. Yacteen's stated reliance on government counsel to file his claim with this Court a year and a half after the letter was sent, and before the case was even filed, is inherently unreasonable. This conclusion is bolstered by the fact that Yacteen was personally served with notice of the forfeiture by a United States marshal in June 1984 and directed to file a claim with the Court if he wished to challenge the seizure. Even if counsel was relying on the AUSA to file the claim, he should at least have checked to make sure the AUSA did so after Yacteen received notice of the complaint.

Third, while Yacteen refers the Court to two older district court cases, wherein courts have relaxed the requirements of Rule C(6), *see United States v. Articles of Hazardous Substance,* 444 F.Supp. 1260 (M.D.N.C.), *revised and modified on other grounds,* 588 F.2d 39 (4th Cir.1978); *United States v. One 1966 Chevrolet Pickup Truck,* 56 F.R.D. 459 (E.D.Tex.1972), the current and apparently uniform stance taken by the federal judiciary is that Rule C(6) is to be applied strictly in forfeiture proceedings, subject to few exceptions. *See United States v. United States Currency Totalling $3,817.49,* 826 F.2d 785, 786–88 (8th Cir.1987) (default judgment appropriately entered where claimant failed to comply with Rule C(6)); *United States v. Beechcraft Queen Airplane Serial Number LD–24,* 789 F.2d 627, 630 (8th Cir. 1986)(trial court did not abuse its discretion in entering default judgment for Rule C(6) violation); *United States v. United States Currency in the Amount of $2,857.00,* 754 F.2d at 212–14 (claimant's failure to file verified claim pursuant to Rule C(6) warranted dismissal of case); *United States v. One 1978 Piper Navajo PA–31 Aircraft,* 748 F.2d 316, 318–20 (5th Cir.1984) (district court acted within its discretion in entering default judgment for failure to file timely claim under Rule C(6)).

Finally, the Court notes that unlike the situation in the cases cited by Yacteen, his violation of Rule C(6) is not minor. This Court still has not received an answer from him and first became aware of his interest in the case in May 1987 when he filed a motion to dismiss roughly three years after the complaint was filed. This is not a case of mere inadvertence. Rather, it is a belated and hindsighted attempt to circumvent the Supplemental Rules. It will not be tolerated. The Court recognizes it has the discretion to excuse Toufic Yacteen from his Rule C(6) violation in this case, yet chooses not to do so. Based on Toufic Yacteen's Rule C(6) violation, the Court concludes he has no standing to challenge the present forfeiture.

The Court wishes to add that it has extensively reviewed Toufic Yacteen's claims and is under the firm impression that his case is extremely weak. Yacteen's defense in this case is grounded upon his complaints that the government delayed prosecuting the forfeiture and that he was the "innocent owner" of a vehicle which he was surprised to learn later was involved in drug running. The government challenges these assertions and states that while he may have been the titular owner of the vehicle, he was not the owner of the vehicle for purposes of a forfeiture proceeding and, furthermore, that he was well aware of the illegal activities involving the defendant Jaguar.

The Court notes that the purchase of the defendant Jaguar was negotiated by Yac-

teen's son and Tamer Mourad, the aforementioned heroin traffickers. Toufic Yacteen never had any involvement with the purchase of the vehicle except that he took out a loan to secure its purchase. Moreover, Toufic Yacteen apparently has never even driven the vehicle. Rather, Tamer Mourad and Adnan Yacteen regularly used the automobile to facilitate their illegal enterprises. Thus, the government's argument that Toufic Yacteen was nothing but a "straw man" for the purchase of the vehicle is strong.

Also, Toufic Yacteen has stipulated that the government had probable cause to seize the Jaguar. At the time of his arrest, Adnan Yacteen lived with his parents in Massachusetts. After the arrests were made, the DEA sought and obtained permission to search the Yacteen household. Agents found and seized throughout the house a false bottom suitcase containing traces of heroin; a triple beam scale; many mini scales; a heat sealer; glassine bags; hollow-point bullets; a .357 Magnum handgun; $10,000 in case; and financial records concerning Yacteen's narcotics trafficking. *See United States v. Mourad,* 729 F.2d at 198. This evidence supports the government's contention that Toufic Yacteen was not unaware of the drug activity involving his house, son and the 1982 Jaguar at issue.

These latter comments are provided by the Court to dispel possible notions of harshness one may perceive in this Order refusing to waive the strictures of Supplemental Rule C(6) in this case.

### III. CONCLUSION

For reasons stated above, the Court hereby GRANTS the government's motion for summary judgment in this case, DENIES Toufic Yacteen's motion for summary judgment and orders the defendant Jaguar FORFEITED to the United States.

The forfeiture trial regarding the government's seizure of Tamer Mourad's house (Civil Action No. 83–0108–F) will commence on Wednesday, September 7, 1988 at 10:00 a.m.

It is So Ordered.