**UNITED STATES of America, Plaintiff,**

v.

**ONE 1987 27 FOOT BOSTON WHALER, HULL ID. NO. BWC9A654J687,**

**and**

**One 1987 Chevrolet Blazer, Vin No. 1GNEVL8CZHFLL609L, Defendants.**

**Civ. A. No. 92–2992 (JEI).**

United States District Court, D. New Jersey.

Nov. 30, 1992.

Neil Rodgers Gallagher, U.S. Atty.'s Office, Newark, NJ, for U.S.

Lorraine A. Dicintio, Ballen & Gertel, P.C., Camden, NJ, for One 1987 27 Foot Boston Whaler, Hull ID. No. BWC9A654J687, One 1987 Chevrolet Blazer, VIN No. 1GNEV18CXHF116091, Michael Kapral, Connie Kapral.

Donald Vincent Feeley, Rudd, McDonough and Feeley, Collingswood, NJ, for Chemical Bank of New Jersey, NA.

## OPINION

IRENAS, District Judge:

In this forfeiture action the United States of America has moved to strike the ownership claim of Michael and Connie Kapral to one 1987 27 foot Boston Whaler and one 1987 Chevrolet Blazer alleged to have been used in or purchased with the proceeds of illegal narcotics transactions. The dispute before the court does not involve the merits of the legal or factual position of either the government or the Kaprals. Rather, the motion to strike is based on the alleged failure of the Kaprals to file a claim within the time and in the form required by the Supplemental Rules For Certain Admiralty and Maritime Claims, 28 U.S.C. Supplemental Rule C(6) ("Supplemental Rules").

For the reasons hereafter set forth, the government's motion will be denied.

### Background

The heart of the government's legal position is that the Boston Whaler was purchased with proceeds derived from the illegal sale of methamphetamine and that the Blazer was used to transport or facilitate the transportation of the same illegal narcotic. *See* Verified Complaint for Forfeiture ("Comp.") filed on July 17, 1992; 21 U.S.C. § 881(a)(4) and (6).

Agents of the United States Drug Enforcement Agency seized the Blazer on March 24, 1992, and three days later impounded the Boston Whaler. Comp., Count I, ¶ 4 and Count II, ¶ 4.[1]

---

1. The seizure of the Boston Whaler appears to have been done pursuant to a "Seizure Warrant" executed by Magistrate Judge Ronald J. Hedges on March 25, 1992. The Verified Complaint states that the seizure occurred on March 27, 1992, while a later affidavit of Neil R. Gallagher,

Where the property seized has a value of less than $500,000, the government can proceed with a relatively simple procedure known as administrative forfeiture. This process involves appraisal of the property, appropriate public notice and sale. 21 U.S.C. § 881(d); 19 U.S.C. §§ 1607–1609 (1992); 21 C.F.R. §§ 1316.71–.81 (1992); 19 C.F.R. §§ 162.42–48.

If a claimant files a sworn claim to the property and posts a sufficient bond, the administrative procedure ceases, and the matter is referred to the appropriate United States Attorney for what is referred to as judicial condemnation or judicial forfeiture. 19 U.S.C. § 1608; 21 C.F.R. § 1316.78 (1992); 19 C.F.R. § 162.47(d) (1992). In this proceeding the Supplemental Rules apply. 28 U.S.C. § 2461. *See United States v. United States Currency Etc.*, 754 F.2d 208, 210–213 (7th Cir.1985).[2]

The Kaprals concede that on or about May 15, 1992, they received by certified mail several Notices of Seizure advising them that the Blazer and the Boston Whaler had been seized because they had been "used or acquired as a result of a drug-related offense." These notices advised the Kaprals that to contest the forfeiture they had twenty days "from the first date of publication" to file personally signed claims of ownership accompanied by an appropriate cost bond.

As required by 19 U.S.C. § 1607(a) and 21 C.F.R. § 1316.75, the seizure of the Blazer was advertised in *USA TODAY* on May 6, 1992. A similar notice for the Boston Whaler was published on May 20, 1992. It is unclear from the motion papers whether either of these notices was published for three weeks as required by the statute and regulation. 19 U.S.C. § 1607(a); 21 C.F.R. § 1316.75(a).

It is not disputed that upon receiving the Notices of Seizure the Kaprals timely filed the sworn claims of ownership and bonds required to stop the administrative forfeiture process. On May 15, 1992, Michael Kapral asserted ownership of the Blazer and posted a $1,170 bond. On May 29, 1992, both Kaprals asserted ownership of the Boston Whaler and posted a $5,000 bond. As required by statute, the government resorted to the courts to complete the forfeiture. 19 U.S.C. § 1608; 21 C.F.R. § 1316.78.

On July 17, 1992, the government filed its Verified Complaint For Forfeiture of the Blazer and the Boston Whaler. Supplemental Rules C(2) and E(2)(a). Supplemental Rule C(3) provides that original process should be by warrant of arrest. *See also* Supplemental Rule E(4). Since the property had previously been seized, execution of the arrest warrant on July 31, 1992, was achieved by the metaphysical act of having a Deputy United States Marshall serve the arrest warrant upon United States Marshall, Arthur Borinsky.

A Notice of Forfeiture announcing the commencement of judicial proceedings was published in the *Atlantic City Press* on August 10, 17, and 24, 1992, and in the *Courier Post* of Camden on August 14 and 21, 1992. Supplemental Rule C(4).

The nub of the controversy at bar is the government's allegation that the Kaprals failed to comply with Supplemental Rule C(6) which provides in relevant part:

> The claimant of property that is the subject of an action in rem shall file a claim within 10 days after process has been executed, or within such additional time as may be allowed by the court, and shall serve an answer within 20 days after the filing of the claim. The claim shall be verified on oath or solemn affirmation, and shall state the interest in the property by virtue of which the claimant de-

---

Esq. suggests it occurred a day earlier. The warrant itself incorrectly refers to the vessel as being a "1986" Boston Whaler. There is no mention in the motion papers of a warrant authorizing seizure of the Blazer, although there does not appear to be a legal requirement for a warrant. *See* 21 U.S.C. § 881(b)(4) and Supplemental Rule C(3).

**2.** As explained in footnotes 1 and 2 in 754 F.2d 210, forfeitures of property in drug related cases are governed by a complex amalgam of laws relating to illegal narcotics, customs and admiralty.

mands its restitution and the right to defend the action.

On August 17, 1992, the government served on the Kaprals the Verified Complaint and a typed copy of the Notice of Forfeiture which had been published in the *Atlantic City Press* and the *Courier–Post.* On September 10, 1992, the Clerk docketed the "claim" of the Kaprals, and on September 17, 1992, a verified answer was docketed. In each instance an affidavit from the Kaprals' attorney alleges that the document was mailed six days earlier. Both the claim and the verified answer appear to have been signed on September 4, 1992, and although the claim was not sworn, the verified answer containing the same information was under oath.

The government contends that because the Verified Complaint and the Notice of Forfeiture was received by the Kaprals on August 19, 1992, the ten day period in Supplemental Rule C(6) for filing a claim expired on September 2, 1992, at least two days before the claim was allegedly mailed and eight days before it was actually filed with the Clerk.

In opposition to the motion the Kaprals argue that (i) service of the Verified Complaint and Notice of Forfeiture on their attorney did not constitute sufficient notice to commence the running of the ten-day period for filing the claim and (ii) the court should exercise its discretion, *nunc pro tunc,* to extend the filing period as permitted by Supplemental Rule C(6).

## Discussion

■ Supplemental Rule C(6) requirements for filing a sworn claim implement the very basic legal proposition that one seeking to contest a judicial *in rem* forfeiture action bears the burden of "demonstrat[ing] an interest in the seized item sufficient to satisfy the court of his standing...." *U.S. v. $47,875 in U.S. Currency,* 746 F.2d 291, 293 (5th Cir.1984). *See also U.S. v. $38,570 U.S. Currency,* 950 F.2d 1108, 1111 (5th Cir.1992).

In addition to the legal requirements of standing, there is a very practical reason for the government and the court to insist that a claimant convincingly demonstrate his rights in property which the government seeks to confiscate. Under 21 U.S.C. § 881(a)(6), which governs the forfeiture of money or the proceeds thereof used to facilitate illegal drug transactions,[3] innocent parties may be protected:

... no property shall be forfeited under this paragraph, to the extent of the interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner.

Where the ownership of property is easily identified, there is not too much potential that an "innocent" claimant will be put forward to defeat the government's forfeiture efforts. But, as the case captions indicate, the subject of the forfeiture is often money on which there are no "fingerprints" of ownership. The government and the courts are rightly concerned that an allegedly innocent claimant will appear to assert ownership and frustrate the forfeiture. This concern is judicially expressed in requiring strict compliance with the rules governing the filing of claims. *See, e.g., United States v. Fifteen Thousand Five Hundred Dollars,* 558 F.2d 1359 (9th Cir.1977).

Concerns that a fictitious claimant will appear are reduced when the property seized is of a type whose provenance is easily ascertained. A registered motor vehicle like a Blazer, and a boat such as a Boston Whaler, are less likely to be subject to false claims of ownership than a pile of currency. Indeed, the moving papers indicate the government's awareness at all times of the interest of the Kaprals in the seized property.

When the administrative forfeiture was commenced the Kaprals filed a sworn claim to ownership and posted the required bond. Although a few days late, a second unsworn claim was filed after the judicial foreclosure commenced, as was a verified answer also in conformance with Rule C(6).

**3.** The Boston Whaler is being forfeited under    this provision.

By any measure the claims and verified answer filed by the Kaprals more than demonstrate the "indicia of reliability ... required to reduce the likelihood of a false or frivolous claim" and the "facially colorable interest in the proceedings sufficient to satisfy the case-or-controversy requirements." *U.S. v. $38,570 U.S. Currency,* 950 F.2d at 1112.

In *U.S. v. One Urban Lot Located at 1 Street A–1,* 885 F.2d 994 (1st Cir.1989), the claimant did not file the "claim" required by Supplemental Rule C(6), but within twenty days did file a verified answer which contained, as in the case at bar, all the information which should have been in the claim. In reversing the trial court's decision striking the claimant's answer Judge John Brown referred to "old fashioned common sense and the time-honored admiralty principle that pleadings and procedural practices in maritime actions should be applied liberally." *Id.* at 1001.[4] He further held that the goals of forcing claimants to promptly come forward and preventing false claims had been fully satisfied and that there was a complete absence of prejudice to the government. *Id.* This reasoning applies with equal or stronger force to the Kaprals' claim.

The statutes and rules governing this type of forfeiture are less than models of clarity, and some confusion is not surprising. Supplemental Rule C(6) states that the ten day period for filing a claim commences "after process has been executed." Since the "arrest" of the Blazer and the Boston Whaler was effectuated on July 31, 1992, the ten day period expired nine days before the Kaprals were served with the Verified Complaint and Notice of Forfeiture on August 19, 1992. Indeed, the ten days expired on the very day the government first published the Notice of Forfeiture in the *Atlantic City Press.*

■ Actual notice to a known claimant is required by 19 U.S.C. § 1607, although it is not clear whether this section mandates a second notice following the commencement of a judicial foreclosure if, as here, an earlier notice was given when the property was first seized. Regardless of the interpretation of that section of the statute, there is no doubt that due process considerations would require actual notice to a known claimant of the commencement of a judicial forfeiture proceeding. However, the argument of the Kaprals that personal service of the Notice, rather than a mailing to their attorney, was required is without merit. As noted by Judge Brown in *U.S. v. One Urban Lot:*

> Well-known and oft-repeated Supreme Court precedent states that notice of a legal proceeding satisfies due process even if not actually received so long as "notice is reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652 [657], 94 L.Ed. 865 (1950) (citations omitted).

*Id.* at 998–999.

Not only was notice to the Kaprals' attorney sufficient under the facts of this case, but the filing of the Verified Answer certainly amounted to a waiver of any alleged defect in the notice.

■ Since under most circumstances the execution of an arrest warrant could not start the ten day clock for filing a claim if the act of arrest did not give reasonable notice to potential claimants, there is inherent ambiguity in the provisions of Supplemental Rule C(6). The government argues that the ten day period for filing the claim should commence when the claimant's attorney received the Verified Complaint and the Notice of Seizure on August 19, 1992, although this is not provided by the specific terms of Supplemental Rule C(6). *See U.S. v. $38,000 In U.S. Currency,* 816 F.2d

---

**4.** Judge Brown's salty and irreverent opinion is worth reading, even for those with no interest in the arcana of *in rem* forfeitures. In footnote 15 at 885 F.2d at 1000 he notes: "Though we are often tempted by legal euphemisms to shy away from good old-fashioned common sense, we refuse to fall into such a trap." We also refuse, but sometimes fall in anyway.

1538, 1546 (11th Cir.1987).[5] Because of this possible ambiguity, a court should hesitate to erase a possible substantial property interest based solely on a minor temporal violation. *See Poulis v. State Farm Fire and Cas. Co.*, 747 F.2d 863, 867–868 (3d Cir.1984).

### Conclusion

 Based on the foregoing the court finds that the government has validly instituted the judicial forfeiture proceeding and provided adequate notice thereof to the Kaprals. Taken together the claim and verified answer executed by the Kaprals on September 4, 1992, meet the requirements of Supplemental Rule C(6). The Court will, therefore, exercise its discretion to extend the time for filing to the date on which the verified answer was actually filed by the Kaprals.

The court finds (i) that such an extension is specifically permitted by Rule C(6); (ii) there is a strong factual basis to support the Kaprals' standing as a claimant to the property; (iii) the government has at all times been aware that the Kaprals would and could assert an ownership interest in the property; (iv) there is some ambiguity in Rule C(6) concerning the commencement of the ten day period for filing the claim; (v) the court always favors a decision on the merits rather than the harsh remedy of dismissal for a technical procedural violation, particularly a delay measured in days of a filing containing information of which the government is already aware; and (vi) there is no evidence that the delay in filing the claim caused any prejudice to the government.

The government's motion to strike the claim of the Kaprals is denied, and an order in conformance with this opinion will be entered by the court.

---

**5.** This case involved a situation where the claimant had actual notice of the judicial forfeiture proceeding, but the government had failed to properly execute the arrest warrant. The court of appeals reversed a dismissal of claimant's answer for failure to file a claim within ten days after receiving notice of the suit. In holding that the ten day period never commenced the court stated:

If anything, the burden on the government to adhere to the procedural rules should be heavier than on claimants. Forfeitures are not favored in the law; strict compliance with the letter of the law by those seeking forfeiture must be required. 816 F.2d at 1546.