**UNITED STATES of America,**

v.

**$8,221,877.16 IN UNITED STATES CURRENCY, et al.**

No. CIV. A. 00–2667.

United States District Court,
D. New Jersey.

May 24, 2001.

Robert J. Cleary, United States Attorney's Office, Peter W. Gaeta, Assistant United States Attorney, Newark, NJ, for U.S.

Brian J. McCarthy, Winston & Strawn, Newark, NJ, Paul J. Fishman, Mishell B. Kneeland, Friedman Kaplan & Seiler LLP, Newark, NJ, Barry R. Fischer, Deborah R. Srour, Lacaz Martins Srour & Fisher LLP, New York, NY, for Defendants.

POLITAN, District Judge.

This matter comes before the Court on a Motion to Dismiss the Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) by Claimants, Turist–Cambio Viagens e Turismo Ltda ("Turist–Cambio") and Kesten Development Corporation ("Kesten") (collectively "Claimants"), and on the Government's Cross–Motion to Compel Claimants to File an Answer in Accordance with Supplemental Rule C(6). On January 30, 2001, Magistrate Judge Ronald J. Hedges stayed Claimant's Motion for Partial Summary Judgment and Motion for Return of the Seized Funds pending the Court's resolution of the motion to dismiss and cross–motion to compel an answer.

The Court heard oral argument on March 26, 2001. Subsequent to oral argument, the parties filed supplemental briefs on a threshold standing issue. Those briefs have also been considered by the Court in rendering this opinion.

## STATEMENT OF FACTS & PROCEDURAL HISTORY

This is a civil forfeiture *in rem* action filed on June 2, 2000 by the United States of America ("the Government") against previously seized funds totaling over eight million dollars. *In rem* proceedings are governed by the Supplemental Rules for Certain Maritime and Admiralty Claims. Supplemental Rule A for Certain Maritime and Admiralty Claims ("Supp.Rule"). The impact and scope of these Supplemental Rules are at the heart of the dispute before the Court.

The Claimants to the defendant funds are a Brazilian money exchange company called Turist–Cambio and a related company called Kesten Development Corporation. Turist–Cambio incorporated Kesten in November 1994. In July 1995, Kesten opened a bank account at MTB Bank in Manhattan which MTB named the "Venus" account.

In 1997, Turist–Cambio opened another account in Manhattan at Foreign Exchange Trade Associates, Inc. ("Forex").[1] Forex, in turn, opened a sub-account on Turist Cambio's behalf at European American Bank ("EAB") which was named the "Tadeland" account. Thus, when Turist Cambio sent checks to Forex for clearance, Forex deposited them into the Tadeland account at EAB. The accumulated balance would then periodically be wired into the Kesten Venus account at MTB.

Prior to the commencement of this *in rem* action, the Government obtained a warrant to seize all funds in Claimants' bank accounts described above.[2] After the warrant was issued, the Government seized approximately $7.4 million dollars from the two bank accounts. Thereafter, the Government continued to seize all funds deposited into the two accounts. In the motion to dismiss, Claimants assert that the seizure of these "after-deposited" funds were beyond the scope of the warrant and therefore, no probable cause existed for the continuing seizure. On that basis, Claimants argue that the Government's Complaint must be dismissed as against the "after-deposited" funds, totaling approximately $800,000.00. Claimants also urge that the initial $7.4 million must be returned because the warrant was not based on probable cause.

The impetus for the Government seizure of the funds at issue here arose out of a criminal investigation into an alleged drug ring. The government alleges that the seized funds were proceeds from drug transactions and a related money laundering scheme in violation of 18 U.S.C. §§ 1956(a)(1), 1956(a)(2) and 1957, and are therefore subject to forfeiture under 18 U.S.C. § 981(a)(1)(A). Compl., ¶ 1. One of Turist Cambio's couriers, Marcos Glikas, whom Turist–Cambio used to deposit checks into their New York bank accounts, was indicted and convicted of conspiracy to commit money laundering on March 19, 1999.

The present Complaint, along with a set of interrogatories, was served on Claimants' counsel on June 13, 2000. Claimants asserted an interest in the seized funds by filing, through an agent named Antonio Pires De Almeida ("Pires"), a claim pursuant to Supplemental Rule C(6) on July 21,

---

**1.** The Forex account was opened after MTB Bank indicated to Kesten and Turist Cambio (through an agent, who will be discussed herein) that it would no longer accept "cash-letter deposits" from any Brazilian or Latin American clients.

**2.** The warrant also permitted the Government to seize funds from an account at Israeli Discount Bank. This seizure, however, is not at issue here.

2000 (after the Government had consented to two requests for extensions of time).

Supplemental Rule C(6) provides:

**(6) Claim and Answer; Interrogatories.** The claimant of property that is the subject of an action in rem *shall file a claim within 10 days after process has been executed,* or within such additional time as may be allowed by the court, *and shall serve an answer within 20 days after the filing of the claim.* The claim shall be verified on oath or solemn affirmation, and shall state the interest in the property by virtue of which the claimant demands its restitution and the right to defend this action. If the claim is made on behalf of the person entitled to possession by an agent, bailee, or attorney, it shall state that the agent, bailee, or attorney is duly authorized to make the claim. *At the time of answering the claimant shall also serve answers to any interrogatories served with the complaint.* In actions in rem interrogatories may be so served without leave of the court.

Supp. Rule C(6)(West 2000)(emphasis added).[3] The rule therefore contemplates two separate actions by a person or entity asserting an interest in seized property. The claimant must first file a claim, and then twenty days later, that claimant must serve an answer to the complaint. Additionally, the rule provides that an answer to any interrogatories must be served when the answer to the complaint is served.

Here, instead of filing an "answer" to the Complaint and a response to the interrogatories, Claimants filed a motion to dismiss the Complaint, a motion for partial summary judgment, and a motion for the return of the seized funds. The Government contends that failure to file an answer and failure to answer the interrogatories is a failure to comply with Rule C(6). The Government therefore cross-moves to compel compliance with Rule C(6), arguing that this Court should not hear Claimants' motion to dismiss until Claimants file an answer and a response to the interrogatories.

Claimants argue that they are entitled to file a motion to dismiss under Rule 12(b) of the general Federal Rules of Civil Procedure in lieu of an "answer" under Rule C(6). Thus, the interplay between the general Rules and the Supplemental Rules must be addressed herein.

At oral argument, the Government raised a different statutory standing issue for the first time. Specifically, the Government contends that the claim filed by Pires failed to establish that Pires had a sufficient interest in the seized funds for purposes of defending this forfeiture action. The Court gave the parties the opportunity to brief this different statutory standing issue; those briefs have now been considered.

### *DISCUSSION*

### I. Claimants' Standing

Although raised by the Government at a later point in time, the first standing issue which the Court will address is whether the Claimants have statutory standing to assert a claim to the seized funds, as it is a threshold issue.

---

**3.** The rule was amended recently and now provides that a "verified statement" instead of a "claim" expressing an interest in the seized property must be filed within 20 days of service of process. Substantively, the rule remains unchanged. The older rule is applicable to this case, and therefore, the Court will use the term "claim" instead of "verified statement." Supp. Rule C(6)(West 2001).

## A. Statutory Standing in General

█ In addition to constitutional Article III standing, which is not contested here, a claimant must satisfy certain statutory standing requirements before being permitted to defend the seized property. *See United States v. $38,000.00 in United States Currency,* 816 F.2d 1538, 1544 (11th Cir.1987)(*citing United States v. Beechcraft Queen Airplane,* 789 F.2d 627, 630 (8th Cir.1986); *United States v. United States Currency in the Amount of $2,857.00,* 754 F.2d 208, 212–13 (7th Cir. 1985)). Affirming or stating under oath that one is the owner of the seized property has been considered (by at least one court) sufficient to state an interest in the property. *See United States v. $40,000 in U.S. Currency,* 763 F.Supp. 1423, 1427 (S.D.Ohio 1991). In fact, in this district, a claimant need not necessarily claim "ownership" of the *res,* but a lesser interest, such as a possessory interest, may be sufficient in order for the claimant to establish standing to contest a forfeiture. *See United States v. Various Computers and Computer Equipment,* 82 F.3d 582, 585 (3d Cir.1996) (*quoting United States v. $38,000 in United States Currency,* 816 F.2d 1538, 1544 (11th Cir.1987)).

Other courts have held that a claimant must produce some evidence of ownership, aside from a statement under oath, in order to establish standing. *United States v. $38,570 U.S. Currency,* 950 F.2d 1108, 1112 (5th Cir.1992). The First Circuit Court of Appeals has held that where a claimant exercised sufficient control over funds in a bank account on which he was a co-signer, he had standing to assert a claim to the *res. United States v. U.S. Currency, $81,000.00, etc., et al.,* 189 F.3d 28, 37 (1st Cir.1999); *accord Torres v. $36,256.80 U.S. Currency,* 25 F.3d 1154, 1157 (2d Cir.1994).

In *Torres,* the Second Circuit Court of Appeals held that the district court erred in finding that a claimant had no standing to contest a forfeiture. In that case, the seized property was a certificate of deposit ("C.D.") in the name of a man who was convicted of certain drug offenses. The government seized the funds believing them to be proceeds from drug transactions. The convicted man's wife filed a claim and requested the return of the funds, asserting that the C.D. was actually hers because it was purchased from loan proceeds which in reality were issued to her. The claimant asserted that she instructed the bank to make the loan check payable to her husband with the understanding that her husband would pay her back upon maturation of the C.D. The Appeals Court found that the wife's sworn assertions were sufficient to confer standing for purposes of contesting the civil forfeiture because under New York law, she arguably had a constructive trust over the C.D. and its proceeds. *Id.* at 1158.

The Fifth Circuit has described the burden of establishing statutory standing to contest civil forfeiture proceedings as a light one. *United States v. $9,041,598.68,* 976 F.Supp. 642, 648 (S.D.Tex.1997). The Second Circuit apparently agrees. *See Torres,* 25 F.3d at 1157. The *Torres* Court looked to the congressional intent behind forfeiture laws, and found that Congress indicated that standing to challenge government forfeitures should "be broadly interpreted to include any person with a recognizable legal or equitable interest in the property seized." *Id.* at 1157–58 (*quoting* Joint Explanatory Statement of Titles II and III, 95th Cong.2d Sess. (1978), *reprinted in,* 1978 U.S.C.C.A.N. 9518, 9522).

█ Here, Pires filed a verified claim to

the seized funds[4] and submitted a special power of attorney which gives him the authority to do certain acts on behalf of Kesten. The power of attorney, dated January 29, 1999, grants Pires the power to act individually in the name of Kesten Development Corporation, for the following purposes:

1. To open or close bank accounts on the company's behalf;

2. To deposit money of the company in any bank account;

3. To draw or designate the person or persons authorized to draw against such accounts;

4. To accept statements or liquidations of such accounts, give instructions and approve transactions involving same;

5. To negotiate with banks, financial or credit institutions overdrafts or lines of the credit or other types of credit, with or without colaterals [sic].

Gov't Ex. 2. State law governs the issue of whether a sufficient ownership interest is established. *See United States v. One 1973 Rolls Royce,* 43 F.3d 794, 805 n. 8 (3d Cir.1994). But, a choice of law analysis and an application of state law need not be engaged in here, however, as the Court finds below that Claimants have established a sufficient relationship to the *res* for purposes of challenging this forfeiture.

■■ Although generally the mere assertion of ownership over the *res,* without more, is insufficient to establish standing in a civil forfeiture case, standing is established where the mere assertion is coupled with an admission by the Government that the claimant has a relationship to the seized property. *See United States v. $38,570 U.S. Currency,* 950 F.2d 1108,

1112–13 (5th Cir.1992). In other words, where the government admits that a claimant has a relationship to the *res,* no additional evidence of ownership need be produced by that claimant in order to establish standing. *Id.* at 1113. In *$38,570 U.S. Currency,* the Court found that because the government's complaint "clearly specified that [the claimant] exercised some form of dominion over the currency," the claimant's claim of ownership, together with the government's allegation, was sufficient to establish standing to contest the forfeiture action. *Id.; accord United States v. U.S. Currency in the Amount of $294,600,* 1993 WL 416654, *3–4 (E.D.N.Y. Sept.28, 1993)(denying government's motion to dismiss claim for lack of standing because evidence of ownership not required when government previously conceded claimant's connection to the *res* ); *United States v. Forfeiture, Stop Six Center,* 794 F.Supp. 626, 632 (N.D.Tex.1992)(stating that Government's allegation of claimant's involvement with seized *res* was sufficient to establish standing); *United States v. $68,580.00 in U.S. Currency,* 815 F.Supp. 1479, 1481 (M.D.Ga.1993)(finding that claim of ownership coupled with federal agent's admission that claimant "owned the money" was sufficient to establish statutory standing over the *res* ).

■ In the case at bar, Claimants point to the Government's Complaint in support of their contention that Pires has standing to defend this action. The Government alleges in the Complaint that Pires had control over the Kesten Venus account at MTB Bank. Compl., ¶ 50A. Moreover, the government asserts that when MTB Bank

---

**4.** The Government seems to take issue with the fact that the English version of this document was unsigned. Gov't Supp. Br. at 4. The Court notes, however, that Pires did sign the Portuguese version (presumably the version he understood), and a signed Affidavit of Accuracy was filed which states that the translation from Portuguese to English was a true translation. The Court is therefore convinced that the claim is properly verified.

inquired about large "cash-letter" deposits, it was Pires, along with others, who met with bank officials in an attempt to quell the bank's concerns. *Id.,* ¶ 52. The Government further alleges, with respect to the account at Forex, that "[t]he true owner of the Tadeland account is Pires." *Id.,* ¶ 54. There could not be a stronger assertion by the Government that Pires has a sufficient ownership interest in the seized funds.

Pires' statement under oath, coupled with the Government's allegations that Pires controlled the seized funds, convinces the Court that Claimants have a sufficient interest in the seized funds. Claimants have therefore established statutory standing for purposes of defending this *in rem* action.

However, the Court must still address the different standing issue of whether Claimants are entitled to file motions when they have not yet filed an "answer" as required by Supplemental Rule C(6).

### B. Standing to Make Motions in Lieu of Answer

The Government contends that the Court cannot get to the merits of Claimants' pending motions until such time as Claimants file an "answer" in accordance with Rule C(6). In other words, the Government contends that Claimants have no standing until they comply with Rule C(6), and therefore cannot make a motion in this case until standing is established. As stated previously, instead of filing an answer, Claimants filed a motion to dismiss, a motion for partial summary judgment, and a motion for the return of the seized funds.

 Although the Supplemental Rules apply to this case, it is evident that the Supplemental Rules are not all-encompassing and do not provide guidance for all scenarios in civil forfeiture cases. Here, for example, the Supplemental Rules are silent on the issue of whether a claimant may file a motion in lieu of an "answer." It is clear that the general Rules of Civil Procedure are to be used as gap-fillers for the Supplemental Rules to the extent that the general Rules are consistent with the Supplemental Rules. *See United States v. One 1987 BMW 325, Etc., et al.,* 985 F.2d 655, 659 (1st Cir.1993); *In the Matter of Get Wet Water Sports, Inc. et al.,* 1996 WL 162073, at *2 (D.N.J. March 18, 1996); *Sea Hunt Corp. v. O.S. DeBraak Equipment, Ltd.,* 1992 WL 97370, at *17 (D.Del. April 30, 1992). Or, as Supplemental Rule A states: "The general Rules of Civil Procedure for the United States District Courts are also applicable to [civil forfeiture] proceedings *except to the extent that they are inconsistent with these Supplemental Rules.*" Supp. Rule A (emphasis added). The important question is therefore whether Rule C(6), which requires an "answer," is inconsistent with Rule 12 of the general Rules, which allows for either an answer or a motion to be filed in response to a complaint. Supp. Rule C(6); Fed.R.Civ.P. 12(b).

A review of case law construing the Supplemental Rules indicates that courts commonly require strict compliance with the Supplemental Rules in civil forfeiture cases. *See Beechcraft Queen Airplane,* 789 F.2d at 630 (holding that it was properly within the district court's discretion to require strict compliance with Rule C(6) and that it was proper to deny relief to a claimant because he did not file a "claim" even though he did file an "answer"); *United States v. United States Currency in the Amount of $2,857,* 754 F.2d 208 (7th Cir.1985)(dismissing claim because it was not "verified" as required by C(6)); *$38,000 in U.S. Currency,* 816 F.2d at 1547 ("Courts consistently have required claimants to follow the language of the Supplemental Rules to the letter"); *United States*

*v. $288,914 in United States Currency,* 722 F.Supp. 267, 270 (E.D.La.1989)(stating that claimants "must strictly comply with pleading requirements of Supplemental Rule C(6)"); *United States v. Parcel of Land Located at 19 Crossmeadow Rd; United States v. One 1982 Jaguar XJ–6,* 686 F.Supp. 364, 367 (D.Mass.1988)("The current and apparently uniform stance taken by the federal judiciary is that Rule C(6) is to be applied strictly in forfeiture proceedings, subject to few exceptions").

And, in an unpublished case, at least one district court has held that a claimant has no standing to file a 12(b) motion in a civil forfeiture action until that claimant has filed an "answer" in accordance with Rule C(6). *United States v. $38,870.00 in United States Currency,* No. 7:99–47, at 4 (M.D. Ga. filed Sept. 24, 1999). Specifically, the Court held that Rule 12(b) was inconsistent with Supplemental Rule C(6) since Rule 12 allows for motions in lieu of an answer and Supplemental Rule C(6) does not. The Court therefore entered default against claimants for failing to answer even though claimants filed a motion within the time frame. Though certainly this Court is not bound by an unpublished decision in the Middle District of Georgia, this Court agrees that the two rules are inconsistent.

Claimants argue that Supplemental Rule C(6) is simply an alternative to the requirements of Rule 12 and other discovery rules, and that Rule C(6) merely provides a time line for when an answer or other response is due. Supplemental Rule A, however, makes it clear, as does the above-cited case law, that the Supplemental Rules are not "alternative" rules but are firm rules governing *in rem* actions, and they prevail over the general Rules when there is an inconsistency.

■ While Claimants cite a number of cases in which federal courts have entertained motions to dismiss in *in rem* cases before an answer has been filed, and while claimants cited a treatise which contemplates a motion in lieu of an answer, this Court has discretion to require *strict* compliance with the Supplemental Rules. *Beechcraft Queen Airplane,* 789 F.2d at 630. Supplemental Rule C(6) requires an "answer" and only an answer. Additionally, Rule C(6) requires a response to interrogatories where the Government has served interrogatories with the Complaint.[5] This Court therefore finds that a claimant may not file a motion to dismiss, or any other motion, in lieu of an "answer" when challenging a civil forfeiture action.

## II. Government's Motion to Compel Claimants to File Answer

■ The Government is not moving for entry of default against Claimants based on the failure to answer, but instead moves to compel an answer even though it will be untimely. This Court has discretion to enlarge the time for serving an answer under Rule C(6). *United States v. One 1987 27 Foot Boston Whaler,* 808 F.Supp. 382, 387 (D.N.J.1992). In light of all of the circumstances surrounding this case, the Court finds that it is proper to allow Claimants to file an answer rather than entering default against them. Claimants shall also serve an answer to the interrogatories at the time the answer is served on the Government. Supp. Rule C(6); *see also United States v. One 1971*

---

5. Claimants also argue that because the Government signed a consent order allowing Claimants additional time in which to "answer or otherwise respond," the Government was aware that Claimants could "otherwise respond." The Government did not, however, through this consent to extend the response time, waive the requirements of Rule C(6).

*Corvette Stingray,* 1989 WL 153951, at *1 (E.D.Pa. Dec.14, 1989).

## CONCLUSION

Based on the foregoing analysis, Claimants' Motion to Dismiss is **DISMISSED WITHOUT PREJUDICE** with the right to renew said motion after compliance with Supplemental Rule C(6). Additionally Claimants Motion for Partial Summary Judgment and Motion for the Return of the Seized funds is also **DISMISSED WITHOUT PREJUDICE** with the right to renew. The Government's Motion to Compel Claimants to File an Answer is **GRANTED**.