UNITED STATES of America

v.

$288,914 IN UNITED STATES CURRENCY.

Civ. A. No. 89–1102.

United States District Court, E.D. Louisiana.

Sept. 11, 1989.

Constantine D. Georges, Asst. U.S. Atty., New Orleans, La., for U.S.

Hilliard C. Fazande, II, New Orleans, La., for U.S. Currency aka $288,914 in U.S. Currency, Irene Wesley and Betty C. Roussell.

### ORDER AND REASONS

FELDMAN, District Judge.

The Court has before it a Motion to Strike Answer and Counterclaim; to Enter Default Judgment and for Rule 11 and Rule 37 Sanctions filed by the United States of America, and a Motion to Dismiss filed by the claimants of the defendant currency. The United States' motion is GRANTED. The claimants' Motion to Dismiss is DENIED.

#### Background

The facts alleged by the government are not disputed, only their inferences are challenged.

On December 11, 1988, the claimants, Irene Wesley and Betty Roussell, together with a male companion later identified as Mack Dorsey, a/k/a Mack Cushingberry, purchased one-way airline tickets to Los Angeles, California. The tickets were purchased in the names of "Rose Jones," "Mary Jones," and "Darrell White." Dorsey, identifying himself as "White," paid for the tickets in cash with $1,400 in small bills which he removed from his sock. When informed that airline policy required identification for cash purchases of one-way tickets, the claimants and Dorsey, unable to produce identification for the names given, left the ticket counter. The next day, the three changed the names on their tickets to Irene Wesley, Betty Roussell and Mack Dorsey.

Law enforcement agents were alerted to the behavior of the claimants and Dorsey, and intercepted them at the airport security checkpoint prior to their boarding the airplane. When Roussell's purse was searched (with her permission), approximately $3,000 in cash was found inside.

Further investigation led the agents to inquire as to the purpose of the claimants' and Dorsey's trip. Dorsey stated that he was going to attend his sister-in-law's funeral. Wesley initially said she was going Christmas shopping and to visit friends, but changed her story to say that she was going to buy a house in Oakland, California. Roussell, who had also said she was going shopping, changed her story to say she was going to a funeral, but was unable to say whose funeral.

With the permission of the claimants, the agents opened and searched their luggage. Inside, the agents found the currency that is the subject of this forfeiture action. The claimants at first denied any knowledge of the money, then they said that it represented the pooled savings of the two. When asked their occupations, Wesley identified herself as a hairdresser and Roussell said she was a maid. Wesley said she thought that the suitcases contained about $140,000, but Roussell said she thought the amount was about $1,000.

A K–9 certified narcotics dog alerted to the currency in question, indicating the presence of the scent of narcotics. Further investigation revealed that Mack Dorsey had numerous narcotics arrests. The

agents seized the currency, totalling $288,-914, under 21 U.S.C. § 881(a)(6).

The government filed a Complaint of Forfeiture on March 15, 1989. The Clerk of Court issued a Warrant of Arrest for the currency on March 16, 1989. On April 27, 1989, the government published notice of the Complaint of Forfeiture in The Times Picayune in the City of New Orleans. The notice instructed that any person claiming an interest in the currency was required to file a verified claim on or before May 12, 1989, and that an answer was required to be filed within twenty days of the claim. The notice further stated that failure to follow the time schedule could result in default and a judgment of forfeiture.

Claimants filed a timely verified claim on May 12, 1989. When no answer was filed within the requisite time period, the Clerk of Court entered a default against the currency on June 21, 1989. On that same date, claimants filed an Answer, Special Affirmative Defenses and Counterclaim.

### I. Claimants' Motion to Dismiss

The claimants seek dismissal of the government's complaint on three grounds: First, that the complaint does not allege sufficient facts to support an inference that the property is subject to forfeiture under the statute; second, that the government did not obtain a judicial review of the post-seizure warrant, in violation of the United States Constitution and the Supplemental Rules for Certain Admiralty and Maritime Claims; and, third, that the government did not strictly follow the Supplemental Rules.

### A.

■ Cash involved in drug trafficking, or potential drug trafficking, is subject to forfeiture to the United States.[1] The government's initial burden in a forfeiture case like this one is to establish that there was probable cause for belief that a substantial connection exists between the criminal activity under the statute and the property to be forfeited. *United States v. $38,-600.00 in U.S. Currency*, 784 F.2d 694, 697 (5th Cir.1986). The Fifth Circuit threshold for probable cause is the same in this context as elsewhere: reasonable ground for belief of guilt, supported by something less than prima facie proof but more than mere suspicion. *Id.* It is clear that the discovery of large sums of money, without credible explanation, can provide the necessary circumstantial evidence that the money was furnished or intended to be furnished in a drug transaction. *Id.* at 697–98. In this case, the claimants' evasiveness as to the existence of the money, the purchase of tickets under the circumstances recited, the conflicting explanations about the purpose of the trip, the K–9 dog's "alerting" to the money, and the fact that the claimants' companion, Dorsey, had numerous narcotics arrests, provide sufficient grounds to meet the threshold test established by the Fifth Circuit.

### B.

■ As support for their second contention, claimants rely on *United States v. Pappas*, 613 F.2d 324 (1st Cir.1979). *Pappas* does not represent the law in the Fifth Circuit. Instead, this Circuit in *United States v. One 1978 Mercedes Benz, Four-Door Sedan*, 711 F.2d 1297 (5th Cir.1983), criticized *Pappas* and adopted the view taken by the dissent in that case. *Id.* at 1300. The Fifth Circuit allows a warrantless seizure without exigent circumstances and without time restriction when the Attorney General has probable cause to believe the contraband was used in violation of the drug control laws. *Id.* at 1302. Even if it were illegal, the seizure would not bar the

---

1. 21 U.S.C. § 881 reads in part:
   (a) The following shall be subject to forfeiture to the United States and no property right shall exist in them:
   * * *
   (6) All moneys ... furnished or intended to be furnished by any person in exchange for a controlled substance in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys ... used or intended to be used to facilitate any violation of this subchapter, except that no property shall be forfeited under this paragraph, to the extent of the interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner.

government's right to claim the money through forfeiture proceedings. Improper seizure does not jeopardize the government's right to secure forfeiture if probable cause to seize the money can be supported with untainted evidence. *Id.* at 1302–1303. As already discussed, ample circumstantial evidence exists in this record to support probable cause for the seizure of the defendant currency.

### C.

The government complied fully with the requirements of the Supplemental Rules, which the parties agree govern the procedure to be followed in this forfeiture action. See *United States v. Beechcraft Queen Airplane,* 789 F.2d 627, 629 (8th Cir.1986). The appropriate procedures under the Supplemental Rules are enumerated in *United States v. United States Currency Totalling $3,817.49,* 826 F.2d 785, 786 (8th Cir.1987):

> The United States commences a judicial forfeiture by filing a complaint in the district where the seizure occurred. Supp.Rule C(2). Upon the filing of the complaint, the district court clerk issues a warrant for the arrest of the property at issue. *See* Supp.Rule C(3). The United States must then publish notice of the action and arrest in a newspaper of general circulation within the district. The notice must specify the time within which the party filing the claim must file an answer. *See* Supp.Rule C(4). Rule C(6) specifies that a claimant must file an answer within twenty days after filing the claim. Supp.Rule C(6). Rule C(6)

also provides that the claim "shall be verified on oath or solemn affirmation." *Id.* at 786.

A review of the record establishes that the government has followed the prescribed procedure to the letter.[2]

The claimants' Motion to Dismiss is DENIED.

II. **The Government's Motion to Strike Answer and Counterclaim; to Enter Default Judgment and for Rule 11 and 37 Sanctions**

### A.

■ A judicial forfeiture proceeding is a civil action *in rem.* In order to have standing to challenge a forfeiture, a claimant must strictly comply with the pleading requirements of Supplemental Rule C(6). *See United States v. United States Currency in the Amount of $2,857.00,* 754 F.2d 208, 212–13 (7th Cir.1985). In *$2,857* the government instituted a forfeiture action against currency allegedly used in drug trafficking. The claimant filed an unverified claim and an answer that was filed more than twenty days after the deficient claim. The court held that the claimant lacked standing to challenge the forfeiture because he failed to strictly conform to the requirements of Rule C(6). Strict conformity, not casual compliance, is the message of the case literature.

The plain, unambiguous language of Supplemental Rule C(6) requires that in a forfeiture proceeding a claimant must file a verified claim within ten days after the warrant has been issued. The claimant must then file an answer within twenty days. *$3,817.49,* 826 F.2d at 787; *see Unit-*

---

**2.** Claimants contend that the notice requirements have not been complied with under the rules. As authority, they refer to 21 C.F.R. §§ 1316.76 & 1316.75; 19 U.S.C. § 1607; and 19 C.F.R. § 162.45. Since all of the cited rules and the cited statutes deal with administrative seizures of property valued at $100,000 or less, they are not controlling here.

The Supplemental Rule contains a provision that "[i]f the property is not released within 10 days after execution of process, the plaintiff shall promptly or within such time as may be allowed by the court cause public notice of the action and arrest to be given in a newspaper of

general circulation in the district...." Fed.R. Admirality & Maritime Supp.Rule C(4). While there are no cases directly speaking to the question of frequency of notice in a judicial forfeiture under this Rule, this Court reads the reference to "notice" in the singular, requiring one publication. At least one other federal district court, faced with facts similar to these, allowed a forfeiture to proceed with a single publication of notice. *See United States of America v. $28,-000.00 United States Currency,* No. 86 C 6357, 1987 WL 5694 (E.D.Ill. Jan. 16, 1987) (1987 U.S.Dist. LEXIS 365). The text of the Rule itself requires nothing more.

*ed States v. One 1978 Piper Navajo PA-31 Aircraft,* 748 F.2d 316 (5th Cir.1984).

Claimants filed the required verified claim on May 12, 1989, at which time they were represented by counsel.[3] An answer was thus due from claimants on or before June 1, 1989. However, their Answer and Counterclaim were not filed until June 21, 1989. Claimants' failure to strictly adhere to the requirements of Supplemental Rule C(6) requires that their Answer and Counterclaim be stricken. *See Beechcraft,* 789 F.2d at 630.

The Fifth Circuit, in a case involving a default under Rule 55(c), crafted a three-part test for when default decrees should be set aside. *United States v. One Parcel of Real Property,* 763 F.2d 181, 183 (5th Cir.1985). In *One Parcel,* the court considered (1) whether the default was willful; (2) whether setting it aside would prejudice the adversary; and (3) whether a meritorious defense was presented. *Id.* Each of the three inquiries must be satisfied in order that a default decree be set aside. Claimants here were on notice that the forfeiture proceeding had been initiated, as evidenced by the claim they filed. They were represented by counsel, and had the opportunity to file a timely answer to the government's complaint. They have not even minimally carried their burden under *One Parcel.*

The government's Motion to Strike Answer and to Enter Default Judgment is GRANTED.

**B.**

■ The claimants failed to appear at their depositions when proper notice was given, in time for them to attend or contact opposing counsel about a problem. The Court is unclear by Mr. Fazande's reference to the depositions as being scheduled on "Friday, July 16," and to his having called government counsel on "Monday, July 10" to notify counsel that the claimants would be unavailable for their deposition. In fact, the depositions were set for June 16th (and June 10th was a Saturday, not a Monday). Thus, no good reason appears in this record for claimants' failure to appear for their depositions.

Rule 37(d) requires the Court to impose sanctions if a party has failed to appear for that party's deposition after being served with proper notice.[4] Among the sanctions allowed by the Rule is an order striking pleadings or rendering a default judgment against the disobedient party.[5] It is settled law in the Fifth Circuit that Rule 37 empowers a district court to compel discovery through a broad choice of remedies, but the court must not abuse its discretion in fashioning a remedy within the latitude it enjoys. *Griffin v. Aluminum Co. of America,* 564 F.2d 1171, 1172 (5th Cir.1977).

---

**3.** In *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n,* 874 F.2d 274 (5th Cir.1989), the Fifth Circuit ruled that under Rule 55(b)(2) virtually any action by a defendant would constitute an "appearance" requiring that the court, not the clerk, enter a default judgment, and then only after the defendant has been served in writing three days prior to the hearing on the application for default judgment.

In this case the Court is dealing with an issue entirely different from whether the defendant has "appeared." In this *in rem* action the defendant is the currency itself. The issue the Court must resolve is whether the claimants have standing to assert a claim under the strict procedures established by the Supplemental Rules.

**4.** Rule 37(d) reads, in part:

If a party ... fails (1) to appear before the officer who is to take his deposition after being served with due notice, ... the court in which the action is pending on motion may make such orders in regard to the failure as

are just, and among others it may take any action authorized under paragraphs (A), (B), and (C) of subdivision (b)(2) of this rule. In lieu of any order or in addition thereto, the court shall require the party failing to act or the attorney advising that party or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

Fed.R.Civ.P. 37(d).

**5.** Rule 37(d) allows the Court to make orders such as those specified in Rule 37(b)(2)(C), which reads:

(C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, of rendering a judgment by default against the disobedient party.

The government's Motion for Rule 37 Sanctions is GRANTED. The Court also deems assessment of costs of the depositions that were thwarted by claimants as appropriate additional sanctions under the circumstances.

### C.

■ Moreover, the government seeks Rule 11 sanctions against defense counsel (Mr. Fazande) based upon defense counsel's filing of a counterclaim against the United States.[6] "It is well established that Rule 11 imposes the following affirmative duties with which an attorney or litigant certifies he has complied by signing a pleading, motion or other document:

(1) that the attorney has conducted a reasonable inquiry into the facts which support the document;

(2) that the attorney has conducted a reasonable inquiry into the law such that the document embodies existing legal principles or a good faith argument 'for the extension, modification, or reversal of existing law'; and

(3) that the motion is not interposed for purposes of delay, harassment, or increasing costs of litigation."

*Thomas v. Capital Sec. Serv., Inc.,* 836 F.2d 866, 873–74 (5th Cir.1988).

In ruling on Rule 11 motions, district courts must determine if the individual who has signed the document complained of has complied with all of the affirmative duties *Thomas* mandates. *Id.* at 875. Courts have a wide range of factors to consider in reaching a conclusion as to whether the signer has made a reasonable inquiry into the facts and the law. *See id.*

In this case, claimants' counterclaim restates a summary of the facts, but fails to state a basis in law for the counterclaim. Assuming that every factual allegation made by claimant in Count I of the Counterclaim were true, the claim patently fails to state a cause of action against the United States. "There is no statutory basis for such an action. It cannot be construed as a *Bivens* action because only the United States, rather than an individual agent, is named as counterdefendant." *United States v. $149,345 United States Currency,* 747 F.2d 1278, 1282 (9th Cir.1984). The action also falls outside the Federal Tort Claims Act, 28 U.S.C. § 2680(c). *$149,345,* 747 F.2d at 1283.

The counterclaim, then, is based neither on existing legal principles nor on a good faith argument "for the extension, modification, or reversal of existing law." Instead, counsel broadly states: "Moreover, it is settled law that where the government has failed to establish 'probable cause' for its seizure, the claimants may seek monetary compensation." Claimants Memorandum in Opposition to Plaintiff's Motion to Strike and Sanctions at 10 (citing *Bivens v. Six Unknown Named Narcotics Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971)). This is the single sentence devoted to oppose the government's Motion for Rule 11 Sanctions. However, even the most casual reading of *$149,345* would have provided Mr. Fazande with a statement of the law in the Fifth Circuit as it pertains to claims against the government for detention of seized currency. The Court is compelled to conclude that there was no reasonable inquiry into the law.

Where the Court finds a Rule 11 violation, it is obligated to impose sanctions on

---

6. Rule 11 provides:

Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least an attorney of record.... The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not

interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.... If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing.... Fed.R.Civ.P. 11.

the offending attorney. *Thomas,* 836 F.2d at 876. This Court is vested with considerable discretion in determining the appropriate sanction. *Id.* at 876–77. The sanction should be tailored to the wrong, and should be educational and rehabilitative in character. *Id.* at 877.

The government's Motion for Rule 11 Sanctions is GRANTED. Because the Counterclaim signed by Mr. Fazande does not embody existing legal principles, or offer any supportable thesis for change, it is an appropriate sanction that the Counterclaim be dismissed. Therefore, the government's Motion to Strike Counterclaim is GRANTED.

### III. Conclusion

The United States' Motion to Strike Answer and Counterclaim; to Enter Default Judgment and for Rule 11 and 37 Sanctions is GRANTED. The claimants' Motion to Dismiss is DENIED. In addition to the other relief stated in this Order and Reasons, it is ORDERED that claimants pay the costs the government incurred because of their failure to appear at their scheduled depositions.