UNITED STATES of America, Plaintiff,

v.

SIXTY–EIGHT THOUSAND FIVE HUNDRED EIGHTY DOLLARS ($68,580.00) IN UNITED STATES CURRENCY, Defendant.

Civ. A. No. 91–168–3–MAC (WDO).

United States District Court,
M.D. Georgia,
Macon Division.

March 15, 1993.

Charles E. Cox, Jr., James N. Crane, Macon, GA, for plaintiff.

Bennett T. Willis, Jr., Macon, GA, for defendant.

## ORDER

OWENS, Chief Judge.

The United States brings this civil forfeiture action pursuant to 21 U.S.C. § 881(a)(6) against the defendant currency $68,580.00. The claimant, Nikolaous Rombakis, is seeking its return. Before the court are two issues: (1) whether the claimant has standing to contest the forfeiture; and (2) whether the United States had probable cause to seize

the defendant currency. After careful consideration of the arguments of counsel, the relevant case law, and the record as a whole, the court hereby issues the following order.

## FACTS

On November 7, 1990, Officer Billy Boney of the Macon Police Department conducted a routine traffic stop of a 1978 Pontiac Bonneville on Interstate 75 for weaving. The vehicle was traveling from Chicago, Illinois, to West Palm Beach, Florida.

Officer Boney requested and received the consent of Nikolaous Rombakis to search the vehicle. Officer Boney discovered a total of $68,580: $60,000 wrapped in a taped bundle and $4,260 in a plastic bag, both in the purse of Mary Robey, one of the two female passengers in the vehicle; and $4,320 in the pants pockets of Rombakis.

When Mary Robey was asked about the money in her purse, she claimed that she received it from her brother. She later admitted at the police station that this was untrue and that the money actually belonged to Rombakis.

Rombakis initially denied ownership of the $64,260 which was found in Robey's purse. Rombakis did, however, acknowledge that the $4,320 which was found in his pants pockets was his money. Rombakis later changed his response and stated that all of the money was his. Thereafter, Rombakis filed a verified claim asserting ownership of the entire $68,580.

## DISCUSSION

### I. Standing

■ To challenge a forfeiture action, an individual must first demonstrate an interest in the seized item sufficient to satisfy the court of his standing as a claimant. *United States v. $364,960.00 in U.S. Currency*, 661 F.2d 319, 326 (5th Cir. Unit B 1981). One must claim an ownership or possessory interest in the property seized. *United States v. $500,000.00 in U.S. Currency*, 730 F.2d 1437, 1439 (11th Cir.1984). This burden is on the claimant. *United States v. $38,000.00 in U.S. Currency*, 816 F.2d 1538, 1543–44 n. 12 (11th Cir.1987). The government contends that the claimant lacks standing to contest the forfeiture.

■ At the time of the stop, Rombakis asserted that the $4,320, which was found in his pants pockets, was his. Therefore, there is no question that Rombakis, as the owner of the $4,320, has standing to contest its forfeiture. Rombakis contends that he is also the owner of the remainder of the currency. Rombakis testified that the $64,260 represents the proceeds from the 1985 sale of an alcoholic beverage license.

In *United States v. $38,570 U.S. Currency*, 950 F.2d 1108 (5th Cir.1992), drug agents seized $38,570 from the passenger of a vehicle driven by the claimant. In its complaint, the government admitted that the claimant had exercised some form of dominion over the currency. The Fifth Circuit held that this admission together with the claimant's claim of ownership were sufficient to establish standing. *Id.* at 1113.

The facts of this case are analogous to those found in *$38,570 U.S. Currency*. DEA agent James Swift (the agent who seized the $68,580) admitted in his deposition that he believed Rombakis "controlled the money." (Swift Dep. at 6). He further admitted that his investigation confirmed the fact that Rombakis "owned the money." (Swift Dep. at 6). The court also notes that Rombakis was present at the time and place of the seizure. Finally, Rombakis and Robey both stated, although not initially, that Rombakis was the owner of the defendant currency. Therefore, the court concludes that agent Swift's admissions coupled with Rombakis's claim of ownership are sufficient to establish standing over the entire $68,580.

### II. Probable Cause

■ Once the claimant establishes his standing, the burden shifts to the government to establish that probable cause exists to believe that there is a substantial connection between the property to be forfeited and the criminal activity defined by the statute. *United States v. $4,255,000.00 in U.S. Currency*, 762 F.2d 895, 903 (11th Cir.1985), *cert. denied*, 474 U.S. 1056, 106 S.Ct. 795, 88

L.Ed.2d 772 (1986). "Probable cause" is defined as "reasonable ground for belief of guilt, supported by less than prima facie proof but more than mere suspicion." *Id.* at 903.

■ Probable cause may be established by circumstantial evidence, *$364,960.00 in U.S. Currency*, 661 F.2d at 325, and that evidence may include facts learned after the actual seizure of the money. *United States v. $41,-305.00 in Currency & Traveler's Checks*, 802 F.2d 1339, 1343 (11th Cir.1986).

■ The aggregation of facts, each one insufficient standing alone, may suffice to meet the government's burden. *United States v. U.S. Currency, $83,310.78*, 851 F.2d 1231, 1235 (9th Cir.1988). To determine whether the facts are sufficient, the court must "weigh not the individual layers but the 'laminated' total." *United States v. Nigro*, 727 F.2d 100, 104 (6th Cir.1984) (citation omitted).

This court conducted an evidentiary hearing on the issue of probable cause on December 17, 1992. At that hearing, the government contended that the following facts create probable cause to support the belief that the defendant currency was exchanged for or intended to be exchanged for drugs:

1. The claimant was traveling on a known drug route and was nervous when questioned by Officer Boney;

2. The claimant was carrying a large sum of currency in small denomination bills and packaged in brown paper and masking tape;

3. Ms. Robey and the claimant offered inconsistent answers when asked about the identity of the owner of the currency;

4. Testimony was offered by DEA agent Swift regarding the claimant's arrest and conviction record. In 1984, the claimant was arrested in a Chicago airport for possession of a controlled substance (Tylenol 4 and Valium) and approximately $23,000 was seized from him. The case was later dismissed and the money was returned to the claimant. In 1988, the claimant was convicted of passport fraud and sentenced to a term of two years probation. Finally, the claimant was detained and questioned in 1988 in connection with the arrest of a friend for possession with intent to distribute cocaine.

5. The claimant's tax returns indicate that his adjusted gross income was approximately $19,400 in 1987, $8,900 in 1988, $8,400 in 1989, and $10,900 in 1990; and

6. DEA agent Swift testified that a reliable informant told him that the claimant is involved in cocaine trafficking with his brother, Peter Rombakis. Specifically, the informant stated that in 1986 he witnessed the claimant deliver three kilos of cocaine to Peter Rombakis, who then distributed it in the Chicago area.

■ To consider the "laminated total," the court must include probative evidence. Thus, the court will review each fact individually "only to determine whether it is probative, not whether it establishes probable cause standing alone." *United States v. $67,-220.00 in U.S. Currency*, 957 F.2d 280, 285 (6th Cir.1992).

First, the government contends that Rombakis' nervousness and travel to and from West Palm Beach and Chicago, known narcotics source cities, are probative evidence of drug trafficking. Courts have held that nervousness and travel to Miami, a source city for narcotics, may be considered in determining whether the government has met its burden in establishing probable cause. *See, e.g., United States v. Knox*, 839 F.2d 285, 290 (6th Cir.1988), *cert. denied*, 490 U.S. 1019, 109 S.Ct. 1742, 104 L.Ed.2d 179 (1989); *United States v. $215,300 United States Currency*, 882 F.2d 417 (9th Cir.1989), *cert. denied sub nom. Arboleda v. United States*, 497 U.S. 1005, 110 S.Ct. 3242, 111 L.Ed.2d 752 (1990).

The court notes, however, that Rombakis resides in West Palm Beach and his mother and two brothers live in Chicago. *Cf. United States v. Thomas*, 913 F.2d 1111, 1118 (4th Cir.1990) (claimant never offered any explanation for his bizarre travel patterns to counter obvious inference of drug trafficking). Furthermore, the claimant's nervousness can be attributed, at least in part, to Officer Boney's declaration that it is illegal to carry more than $5000 in cash on the interstate.

■ Second, the government contends that the large sum of currency in small denomination bills and packaged in brown paper and masking tape is probative evidence. Carrying a large sum of currency is strong evidence of narcotics trafficking. *United States v. $93,685.61 in U.S. Currency,* 730 F.2d 571, 572 (9th Cir.) (per curiam), *cert. denied sub nom. Willis v. United States,* 469 U.S. 831, 105 S.Ct. 119, 83 L.Ed.2d 61 (1984). Furthermore, small denomination bills also support the conclusion that the currency was drug money. *United States v. $280,505.00 in U.S. Currency,* 655 F.Supp. 1487, 1501 (S.D.Fla.1986).

■ Third, the government contends that the fact that Ms. Robey and the claimant offered inconsistent answers when asked about the identity of the owner of the currency is probative of drug trafficking. The court agrees that the inconsistent answers are probative evidence.

■ Fourth, the government contends that the claimant's prior criminal record is probative. The court agrees that a criminal record can be probative of illegal drug trafficking. However, the claimant's criminal record in this case is weak evidence of a connection to drugs. DEA agent Swift offered testimony that the claimant was arrested three times. The court notes that the charge for the first arrest was dismissed, the charge for the second arrest was not drug related, and the charge for the third "arrest" did not even result in an arrest. *Compare $215,300 U.S. Currency,* 882 F.2d at 419 (a dismissed charge is not a credible indicia of current illegal activity) *with United States Currency, $83,310.78,* 851 F.2d at 1236 (evidence of two prior *convictions* for possession, in addition to a prior arrest for possession, probative of probable cause).

Fifth, the government contends that the claimant's tax returns do not reflect a large enough income to account for the seized currency. The claimant, however, asserts that the money represents the proceeds from the 1985 sale of an alcoholic beverage license. In her deposition, the claimant's ex-wife confirmed the fact that the liquor license was sold in 1985 and that the claimant took the proceeds, which amounted to approximately $130,000. (Zabrodski Dep. pp. 10–11). The court finds that these facts present a plausible explanation for the origination of the $68,580. *Cf. United States v. $250,000 in United States Currency,* 808 F.2d 895, 899 (1st Cir.1987) (absence of any apparent legitimate sources for seized currency suggests that the money is derived from drug trafficking).

Finally, the government contends that the information provided by the reliable informant supports probable cause. The informant stated that in 1986 he witnessed the claimant deliver three kilos of cocaine to Peter Rombakis. This evidence may support a reasonable belief that the claimant *previously* engaged in illegal drug trafficking. The question, however, is whether the *$68,580 seized in this case* was exchanged for or intended to be exchanged for drugs. The informant's statements do not link the defendant currency to an exchange involving drugs. Therefore, the court finds that this evidence also has weak probative value.

The evidence as a whole shows that the claimant was traveling on a known drug route and acted nervous, was carrying a large sum of currency in small denomination bills, lied about the identity of the owner of the currency, has a criminal record, and has a modest income according to his tax returns. In addition, an informant stated that claimant delivered three kilos of cocaine to his brother in 1986.

This case is very similar to *United States v. $38,600.00 in U.S. Currency,* 784 F.2d 694 (5th Cir.1986). In that case, border patrol agents stopped the claimant's vehicle and smelled marijuana. Upon searching the vehicle, the agents discovered a large sum of cash in small denomination bills hidden under the back seat, a pipe containing marijuana residue, and rolling papers. Furthermore, the claimant gave inconsistent answers when asked about the identity of the owner of the currency. The Fifth Circuit held that:

> this evidence may very well give rise to a reasonable belief that there exists a connection between the money seized and *some* illegal activity; here, however, the evidence gives rise only to a suspicion of a connection between the money seized and

its use in a transaction for a controlled substance.

*Id.* at 699.

In this case, there is even less evidence than that presented to the court in *$38,600.00 in U.S. Currency* upon which to base a finding of probable cause. Here, there was no evidence of drugs or drug paraphernalia. Furthermore, the cash was not concealed.

Forfeitures that have been upheld by the Eleventh Circuit have been based on much stronger evidence than in the instant case. *See, e.g., $41,305.00 in Currency & Traveler's Checks,* 802 F.2d at 1343–44 (Reputed drug dealer delivered one kilo of cocaine to an individual, arranged for subsequent delivery from a larger shipment and did in fact deliver second kilo at the time of his arrest; dealer later prosecuted in state court); *$364,-960.00 in U.S. Currency,* 661 F.2d at 323 (two illegal aliens from Colombia arrested in an apartment in which they claimed no interest with drugs, drug paraphernalia, guns and a large sum of currency of which they denied ownership). The court notes that this case presents a close question. However, the court would be speculating to say that the money was exchanged for or intended to be exchanged for drugs. Thus, court finds that the government has failed to meet its burden of proof as to probable cause. Accordingly, the government's request for forfeiture of the defendant currency is DENIED.

SO ORDERED.