**UNITED STATES of America, Plaintiff,**

v.

**FUNDS FROM PRUDENTIAL SECURITIES et al., Defendants.**

**No. CIV.A.00–3046(RMU).**

United States District Court, District of Columbia.

Jan. 29, 2004.

Linda Otani McKinney, U.S. Attorney's Office, Washington, DC, for Plaintiff.

### MEMORANDUM OPINION

URBINA, District Judge.

**DENYING THE PLAINTIFF'S MOTION TO STRIKE; DENYING THE PLAINTIFF'S REQUEST FOR DEFAULT JUDGMENT; AND DENYING THE PLAINTIFF'S REQUEST FOR A DECREE OF FORFEITURE**

## I. INTRODUCTION

*If a bull gores a man or a woman to death, the bull must be stoned to death, and its meat must not be eaten. But the owner of the bull will not be held responsible.*[1]

---

**1.** Courts have noted that forfeiture is an ancient penalty with its origins tracing back to Biblical times. *See, e.g., Calero–Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 680–90, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974) (citing Exodus 21:28); *United States v. All Funds in Account Nos. 747.034/278*, 295 F.3d 23, 25 (D.C.Cir.2002).

This *in rem* civil forfeiture[2] matter is once again before the court on the motion of the government ("the plaintiff") to strike the claim of Latonya Curtis ("the claimant") and its related requests for a default judgment and a decree of forfeiture. Because the claimant's verified claim satisfies the requirements of Supplemental Rule C(6) of the Federal Rules of Civil Procedure, the court denies the plaintiff's motion to strike the claimant's claim and, correspondingly, denies the plaintiff's pendent requests for a default judgment and a decree of forfeiture.

## II. BACKGROUND[3]

### A. Factual Background

In February 1999, a joint task force, including the Federal Bureau of Investigation ("FBI"), the Washington, D.C. Metropolitan Police Department, and the U.S. Department of Housing and Urban Development, initiated an investigation of a large heroin-trafficking organization run principally by the claimant's significant other, Mr. Earl Garner, Sr.[4] Compl. at 4, 6. The investigation allegedly revealed that the claimant assisted Mr. Garner in vari-

ous aspects of his drug-trafficking operation. *Id.* at 6. Court-authorized telephone monitoring of several members of the drug-trafficking organization allegedly indicated that the claimant, in addition to serving as Mr. Garner's confidant and advisor, stored contraband and/or drug proceeds at her residence in North Bethesda, Maryland. *Id.* Despite these allegations, and after considering the evidence against the claimant at trial, the jury returned a verdict acquitting the claimant.[5]

### B. Procedural Background

Although this case is still in its infancy, it has managed to assemble a rather lengthy procedural history. On December 21, 2000, the plaintiff filed a verified complaint for civil forfeiture *in rem* against the seized funds totaling $41,091.86.[6] The plaintiff alleges that these funds constitute proceeds traceable to violations of Title II of the Controlled Substances Act, as amended, 21 U.S.C. §§ 801 *et seq.*, and the anti-money laundering provisions of 18 U.S.C. § 1956. *Id.* at 2.

On January 25, 2001, the claimant responded to the plaintiff's verified com-

2. "Civil forfeiture actions are brought against property, not people. The owner of the property may intervene to protect his interest.... In exercising *in rem* jurisdiction, the court ... may adjudicate claims of ownership." *United States v. All Funds in Account No. 747.034/278,* 295 F.3d 23, 25 (D.C.Cir.2002).

3. The court adopts portions of the factual and procedural background from its prior rulings of June 18, 2002 and February 6, 2003. *United States v. Funds From Prudential Sec.,* 209 F.Supp.2d 259, 260–61 (D.D.C.2002); *United States v. Funds from Prudential Sec.,* 245 F.Supp.2d 41, 42–44 (D.D.C.2003).

4. On January 5, 2001, defendant Earl Garner, Sr. plead guilty to the following offenses: (1) Conspiracy to Distribute and to Possess With the Intent to Distribute Heroin and Cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A)(i); (2) Continuing Criminal Enterprise, in violation of 21 U.S.C. § 848(a), (b);

and (3) Money Laundering, in violation of 18 U.S.C. § 1956(a)(1). *United States v. Funds From Prudential Sec.,* 209 F.Supp.2d 259, 260 n. 1 (D.D.C.2002).

5. The government charged the claimant with one count of Conspiracy to Distribute and to Possess With the Intent to Distribute Heroin and Cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A)(i). Compl. at 5.

6. The claimant's seized funds include $18,019.54 from Prudential Securities account # OGS257128–06; $13,500.54 from Allfirst Bank account # 910334325; $3,068.62 from Allfirst Bank account # 536–8671–2; $6,453.16 from Strong Fund accounts # 0631201014490 and # 052120101454; and a $50.00 Global Express money order. Compl. at 2–3.

plaint by filing a claim to the seized funds. According to the plaintiff however, the claimant's claim failed to comply with the governing requirements of Supplemental Rule ·C(6) of the Federal Rules of Civil Procedure. Pl.'s Mot. to Treat as Conceded at 3. On March 5, 2001, the plaintiff sent a letter to the claimant and the attorney representing her in the related criminal matter, stating that the claimant's verified claim was defective and that the February 14, 2001 deadline for filing an answer had passed. *Id.* In that same letter, the plaintiff proposed to extend the claimant's filing deadline to March 19, 2001. *Id.*

Thereafter, on March 12, 2001, the claimant's attorney responded to the March 5, 2001 letter, alerting the plaintiff to a recent surgical· procedure undergone by the claimant and requesting that the claimant have through April 15, 2001 to file her answer.[6] Pl.'s Opp'n Ex. V. Oddly enough, in a March 16, 2001 facsimile to the plaintiff, that same attorney stated that he did not represent the claimant in the civil forfeiture matter at bar. *Id.* at 4 & Ex. VII. On April 27, 2001, 12 days after the claimant's requested deadline of April 15 had passed, the claimant filed a motion to late-file her answer, explaining that her surgery and its attendant recovery ·period caused her filing delay. Cl.'s Mot. to Late File at 1.

On May 1, 2001, the court granted the claimant's motion to late-file her answer. Order dated May 1, 2001. That same day, the claimant filed both an amended verified claim, which asserted that she owned the defendant funds, and an answer, reasserting that she was an innocent owner of the defendant funds. Cl.'s Am. Verified Claim at 1; Cl.'s Answer at 1–4.

Also on that same day, the plaintiff filed a motion to strike the claimant's claim. The claimant, however, failed to respond. Consequently, on June 25, 2001, the plaintiff filed a motion asking the court to treat the motion to strike as conceded, enter default judgment, and issue a decree of forfeiture. Pl.'s Mot. to Treat as Conceded at 5.

During the following 12 months, the claimant remained silent and inactive, making no filings. Accordingly, on June 18, 2002, the court granted· the plaintiff's motion to strike, entered default judgment, and issued a decree of forfeiture. *United States v. Funds From Prudential Sec.,* 209 F.Supp.2d 259, 268–69 (D.D.C.2002) (*"Funds I "*).

On June 20, 2002, the claimant filed a motion, followed by three additional motions on June 27, 2002, each asking the court to alter or amend its June 18, 2002 ruling.[7] Mindful of the heightened duty of care owed to *pro se* litigants, the court vacated its prior ruling and allowed the claimant to respond to the ·plaintiff's motion to strike and related requests for entry of default judgment and issuance of a forfeiture decree. *United States v. Funds from Prudential Sec.,* 245 F.Supp.2d 41 (D.D.C.2003) (*"Funds II "*).

---

6.  The claimant reports that on March 7, 2001, she underwent surgery with an expected recovery time of three to ten weeks. Cl.'s Mot. to Late File at 1.

7.  The claimant styled her June 20, 2002 motion as a "motion to request reconsideration of default judgment and decree of forfeiture." She referred to her June 27, 2002 motions as (1) a "motion and incorporated memorandum to reverse the court's decision granting the plaintiff's motion to treat as conceded its motion to strike claimant's claim and motion for default judgment, granting plaintiff's request for a decree of forfeiture"; (2) a "motion requesting dismissal of forfeiture action against funds"; and (3) a "motion to request reconsideration of default judgment and decree of forfeiture." · ·

On March 10, 2003, the claimant filed her response,[8] along with an attached document styled as a verified claim.[9] Accordingly, the court must once again address the plaintiff's motion to strike and its related requests for default judgment and a decree of forfeiture.

## III. ANALYSIS

### A. The Plaintiff's Motion to Strike the Claimant's Claim

#### 1. Legal Standard for a Motion to Strike a Claim in Civil Forfeiture

Supplemental Rule C(6) sets forth the governing standards and procedural requirements that a putative claimant must satisfy in order to perfect a claim in a federal *in rem* forfeiture action. FED. R. CIV. P. SUPP. R. C(6); 18 U.S.C. § 983(a)(4)(A); 21 U.S.C. § 881(b). The rule states in pertinent part:

> The claimant of property that is the subject of an action *in rem* shall file a claim ... verified on oath or solemn affirmation, and shall state the interest in the property by virtue of which the claimant demands its restitution and the right to defend the action.

*Id.*

"To contest a forfeiture action [under Supplemental Rule C(6)], an individual bears the burden of demonstrating an interest in the seized item sufficient to satisfy the court of his standing." *United States v. $47,875 in United States Currency,* 746 F.2d 291, 293 (5th Cir.1984). Specifically, Rule C(6) requires that a putative claimant file a verified claim under oath or affirmation and include "the claimant's interest in the property, the right by which [the claimant] demands restitution, and the right by which [the claimant] defends the action." *United States v. $38,570 in United States Currency,* 950 F.2d 1108, 1111 (5th Cir.1992) (*quoting* FED. R. CIV. P. SUPP. R. C(6)); *see also United States v. Prop. Identified as $88,260.00 in United States Currency,* 925 F.Supp. 838, 840–41 (D.D.C.1996) (noting that the claimant must file a verified claim in an *in rem* forfeiture action to acquire statutory standing); *United States v. A Single Story Double Wide Trailer,* 727 F.Supp. 149, 152–53 (D.Del.1989) (stating that "[o]nly by filing a verified claim, in accordance with C(6), can a claimant demonstrate that he has a sufficient interest in the seized item to satisfy standing requirements"); *United States v. $288,914.00 in United States Currency,* 722 F.Supp. 267, 270 (E.D.La.1989) (recognizing that a claimant must comply with the pleading requirements of Supplemental Rule C(6)). If a putative claimant fails to file a verified claim or otherwise follow the provisions set forth in Supplemental Rule C(6), it is within the court's discretion to strike the deficient claim. *United States v. One 1990 Mercedes Benz 300CE,* 926 F.Supp. 1, 4 (D.D.C.1996).

#### 2. The Court Denies the Plaintiff's Motion to Strike the Claimant's Claim

The plaintiff asserts that the court should grant its motion to strike because the claimant's claim fails to satisfy the

---

**8.** The claimant titles her filing as a "response to plaintiffs [*sic*] opposition to Latonya Curtis's motion to late file her answer to the complaint and motion to strike Latonya Curtis's claim and incorporated motion to set aside the default judgement [sic] against the funds and for their return."

**9.** Treating the March 10, 2003 filing as an amended verified claim, the court considers this document as the operative claim to which the plaintiff's motion to strike applies.

requirements of Rule C(6).[10] Pl.'s Opp'n at 8. Specifically, the plaintiff alleges that the claimant's claim is defective because she has failed to verify it "on oath or solemn affirmation" and it avows only that the claimant is the owner of the defendant funds, thereby failing to "state the interest in the property by virtue of which [she] demands restitution and the right to defend the action." *Id.* at 2–3; *see also* FED. R. CIV. P. SUPP. R. C(6).

Before addressing the alleged deficiencies in the claimant's claim, the court takes a moment to consider Rule C(6) and the ways in which other courts have interpreted it. As an initial matter, the court recognizes that the rule's underlying goal is to prevent frivolous claims by ensuring that putative claimants come forward as quickly as possible after the initiation of forfeiture proceedings so that the court may hear all interested parties and resolve the dispute without delay. FED. R. CIV. P. SUPP. R. C(6) advisory committee's note; *United States v. Various Computers & Computer Equip.*, 82 F.3d 582, 585 (3d Cir.1996).

The plaintiff urges strict compliance with Rule C(6), a construction that denies the claimant standing for any failure to comply with the Rule. Pl.'s Opp'n at 2. As one court has stated, "[i]t is not an abuse of discretion for the district court to require strict compliance with Supplemental Rule C(6)." *United States v. $104,674.00*, 17 F.3d 267, 268 (8th Cir.1994); *see also United States v. Commodity Account No. 549 54930*, 219 F.3d 595, 598 (7th Cir.2000) (noting that "strict compliance with Supplemental Rule C(6) is typically required"); *$288,914 in United States Currency*, 722 F.Supp. at 270 (explaining that "[i]n order

to have standing to challenge a forfeiture proceeding, a claimant must strictly comply with the pleading requirements of Supplemental Rule C(6)"). Moreover, several courts demand strict compliance with the rule, even where the case involves a *pro se* claimant. *E.g., United States v. Gateway Blvd. W.*, 123 F.3d 312, 313 (5th Cir.1997) (denying a *pro se* claimant's request for an extension of time after failing to file a timely verified claim); *United States v. Three Parcels of Real Prop.*, 43 F.3d 388, 393 (8th Cir.1994) (stating that "procedural default is not excused merely because claimants are proceeding *pro se*"); *$104,674.00*, 17 F.3d at 268–69 (upholding a default judgment against *pro se* claimants that failed to comply with the provisions of Rule C(6)); *United States v. Eng*, 951 F.2d 461, 468 (2d Cir.1991) (denying the *pro se* claimant standing after he filed an order to show cause instead of a verified claim); *United States v. One Dairy Farm*, 918 F.2d 310, 312 (1st Cir.1990) (explaining that the appellants lacked standing to contest forfeiture because they failed to file a claim within the time prescribed by Rule C(6)).

In stark contrast to the strict-compliance approach, numerous courts interpret "pleadings and procedural practices under the Supplemental Rules liberally enough" to allow for an appropriate degree of discretion in cases where the underlying goals of Rule C(6) are not frustrated to ensure that courts decide controversies on the merits. *United States v. $80,760.00 in U.S. Currency*, 781 F.Supp. 462, (N.D.Tex. 1991); *see also United States v. $9,020.00 in United States Currency*, 30 Fed. Appx. 855, 858–59 (10th Cir.2002) (limited precedential value); *Various Computers &*

---

**10.** The court need not address the claimant's considerable difficulty in complying with Rule C(6)'s time restrictions because it has already done so in its prior ruling. *See Funds II*, 245 F.Supp.2d 41. Viewing this litigation in its present posture, the court notes that the only remaining issue presently before it is whether the claimant has satisfied the substantive requirements of Rule C(6). FED. R. CIV. P. SUPP. R. C(6); Pl.'s Opp'n at 2.

*Computer Equip.*, 82 F.3d at 585 (recognizing the "time-honored admiralty principle that pleadings and procedural practices in maritime actions should be applied liberally"); *United States v. One Parcel Real Prop.*, 942 F.2d 74, 77 (1st Cir.1991); *United States v. 1 Street A–1*, 885 F.2d 994, 999–1000 (1st Cir.1989) (construing a "verified answer" as both a claim and an answer under Rule C(6)); *United States v. Prop. at 4492 S. Livonia Rd.*, 889 F.2d 1258, 1262 (2d Cir.1989) (excusing technical noncompliance with procedural rules governing the filing of claims where the claimant made a sufficient showing of interest in the forfeited property); *United States v. United States Currency in the Amount of $103,387.27*, 863 F.2d 555, 563 (7th Cir.1988) (reasoning that a claimant's good-faith effort to comply with procedural rules is a basis for permitting an extension of time to file a proper claim). For example, in *$9,020.00 in United States Currency*, the *pro se* claimant filed neither a verified claim, nor an answer, instead filing a "Petition for Remission" that "self-verified . . . under penalty of perjury" a claim to the seized funds. *$9,020.00 in United States Currency*, 30 Fed.Appx. at 857–58.

The Tenth Circuit held that, in light of the claimant's *pro se* status and because the claimant's petition satisfied the requirements and underlying goals of Rule C(6), the court should broadly construe the claimant's petition as both a verified claim and an answer. *Id.* at 859. Moreover, this broad interpretation coincides with the Supreme Court's pronouncement that, in the realm of asset forfeiture, "[t]he dignity of a court derives from the respect accorded to its judgments. That respect is eroded, not enhanced, by too free a recourse to rules foreclosing consideration of claims on the merits." *Degen v. United States*, 517 U.S. 820, 828, 116 S.Ct. 1777, 135 L.Ed.2d 102 (1996).

■ Against this backdrop of disparate interpretation, the court turns to assess the alleged deficiencies in the claimant's claim *sub judice*. First, the court addresses the plaintiff's allegation that the claimant's claim is defective because it is "void of any verification on oath or affirmation."[11] Pl.'s Opp'n at 2–3. The claim states:

> I[,] LaTonya Curtis, am the claimant in the above entitled action. I have read

---

**11.** Rule C(6)'s verification requirement is an "essential element of any claim because of the substantial danger of false claims." *United States Currency in the Amount of $103,387.27*, 863 F.2d at 559. Verification forces the claimant to place herself at risk of perjury for false claims and, consequently, the requirement of oath or affirmation is not a mere technicality that the court easily excuses. *Commodity Account No. 549 54930*, 219 F.3d at 597. Courts have, however, allowed claimants to proceed without verification in certain circumstances. *E.g., Various Computers & Computer Equip.*, 82 F.3d at 585; *1 Street A–1*, 885 F.2d at 999–1000 (interpreting a timely verified answer to serve as both a verified claim and an answer pursuant to Rule C(6)). For instance, in *Various Computers & Computer Equipment*, the claimant, proceeding *in forma pauperis*, filed a claim that failed to include a verification. *Various Computers &*

*Computer Equip.*, 82 F.3d at 584. The Third Circuit relied on equitable principles in allowing the claim to proceed even in the absence of a verification because

> [b]oth the court and the [g]overnment were aware of the source of [the claimant's] interest in the property and the basis for his claim of ownership. Thus, the verification would not have added to the authenticity of [his] petition. . . . We do not believe that we may equitably deny [his] standing where his actions have not thwarted the goals of Rule C(6). . . . To dismiss [his] claim for failure to include a verified statement would contradict[ ] both old-fashioned common sense and the time-honored admiralty principle that pleadings and procedural practices in maritime actions should be applied liberally.

*Id.* at 585.

the foregoing complaint and know the contents thereof. The contents of my response are true to my own knowledge except as to matters therein stated to be alleged upon information and belief, and as to those matters[,] I believe them to be true as laid out in my response.

Cl.'s Verified Claim. While the claimant's claim is "self-verified,"[12] applicable precedent does not require otherwise. *See $9,020.00 in United States Currency,* 30 Fed. Appx. at 858 n. 2 (allowing a self-verified petition under Rule C(6)). Given the fact that the claimant unequivocally asserts the truth of her claim and the plaintiff proffers nothing indicating that this verification is insufficient, the court is satisfied that the claimant adequately verified her claim. *See id.; see also United States v. $40,000 in U.S. Currency,* 763 F.Supp. 1423, 1426 (S.D.Ohio 1991) (observing that the claimant adequately verified her claim when she declared under penalty of perjury that all statements in the claim were true to the best of her knowledge and when the government stated no reason why the verification was inadequate). Therefore, the court will not strike the claimant's claim on the basis of Rule C(6)'s verification requirement.

■ The court now turns to address the plaintiff's remaining argument that the claimant's claim is defective because it fails to "state the interest in the property by virtue of which [she] demand[s] restitution and the right to defend the action." Pl.'s Opp'n at 2–3; *see also* Fed. R. Civ. P. Supp. R. C(6). In her claim, however, the claimant avers that she is the "sole owner of the four bank accounts seized by the government and that she is the sole owner of the

$50.00 global express money order which was taken from her purse." Cl.'s Verified Claim at 1. In addition, the claimant insists that "[t]hese funds [were] derived from legitimate sources of income and are in no way sources of drug trafficking as alleged by the plaintiff." *Id.* The plaintiff maintains that this unsubstantiated declaration of ownership fails to satisfy Rule C(6)'s requirements. Pl.'s Opp'n at 11.

Courts have, however, considered an affirmation or statement under oath that one is the owner of seized property sufficient to establish standing to contest a forfeiture. *E.g., Torres v. $36,256.80 U.S. Currency,* 25 F.3d 1154, 1157 (2d Cir.1994) (finding that a claimant's sworn assertions were sufficient to confer standing for the purpose of contesting civil forfeiture); *United States v. $191,910.00 in United States Currency,* 16 F.3d 1051, 1058 (9th Cir.1994) (emphasizing that "a simple claim of ownership will be sufficient to create standing to challenge a forfeiture"); *$40,000 in U.S. Currency,* 763 F.Supp. at 1427; *cf. $80,760.00 in U.S. Currency,* 781 F.Supp. at 467 n. 15 (stating that a demand "that claimants show a legitimate source [explaining their interest in the *res* ] for the purpose of establishing standing improperly accelerates the claimants' ultimate burden"). For instance, the court in *$40,000 in U.S. Currency* held that a verified claim "need not supply facts" in support of a claimant's ownership interest. *$40,000 in U.S. Currency,* 763 F.Supp. at 1427. Instead, the court ruled that a verified claim must only include a statement under "oath or solemn affirmation" that the claimant is the owner of the defendant

---

**12.** The claimant's claim appears at first glance to be subscribed to and sworn before a notary public. Upon further study, however, it becomes clear that the document is "self-verified" because it was the claimant herself that notarized the document "as true to [her] own knowledge." *See* Cl.'s Verified Claim. The validity of the document's notarization, however, has no bearing on the court's ruling, and the court therefore puts the issue to one side.

funds. *Id.* The court reasoned that "[n]owhere in Supplemental Rule C(6) is there a requirement that the [c]laimant explain how or when his or her interest began. Those issues become important later in a forfeiture proceeding, but they need not be included in the claim." *Id.*

Conversely, other courts indicate that the claimant must come forth with some evidence of ownership interest in order to establish standing to contest a forfeiture. *E.g., United States v. Twenty One Thousand Two Hundred and Eighty Two Dollars, in U.S. Currency,* 47 F.3d 972, 973 (8th Cir.1995) (declining to disturb the district court's decision to strike the claims and answers of a claimant asserting merely a "possessory interest" in the seized funds); *$38,570 U.S. Currency,* 950 F.2d at 1112 (holding that a "bare assertion of ownership of the *res,* without more, is inadequate to prove an ownership interest sufficient to establish standing"); *United States v. One Parcel of Land,* 902 F.2d 1443, 1445 (9th Cir.1990) (observing that the claimant had no standing where he failed to present documentary evidence regarding the purchase of property subject to forfeiture); *Mercado v. United States Customs Serv.,* 873 F.2d 641, 644 (2d Cir. 1989) (refusing to credit the "conclusory and factually unsupported statement … that [the claimant] was 'in possession' of the [seized] money" as sufficient to support standing). In evaluating the sufficiency of the evidence proffered in verified claims, these courts "generally look to dominion and control, such as possession, title, [and] financial stake, as evidence of an ownership interest." *$38,570 U.S. Currency,* 950 F.2d at 113. Thus, although the mere assertion of ownership over the *res,* without more, is insufficient to establish standing in those jurisdictions, standing exists where an assertion of ownership is coupled with an admission by the plaintiff that the claimant has a relationship to the seized property. *United States v. U.S. Currency, $81,000.00,* 189 F.3d 28, 37 (1st Cir.1999) (holding that a claimant has standing to assert a claim to the defendant funds where he exercised sufficient control over the funds in a bank account in which he was a cosigner); *United States v. $515,060.42 in United States Currency,* 152 F.3d 491, 500–01 (6th Cir.1998) (coupling the claimant's claim of ownership with the government's allegations of the claimant's involvement with the seized currency to establish standing); *$38,570 U.S. Currency,* 950 F.2d at 1112–1113 (declaring that the claimant's claim of ownership together with the government's allegation that "the claimant exercised some form of dominion over the currency" was sufficient to establish standing to contest the forfeiture action); *United States v. $260,242.00 U.S. Currency,* 919 F.2d 686, 687 (11th Cir.1990) (recognizing a claimant's standing where the government acknowledged seizing the defendant funds from the trunk of the claimant's automobile); *see also United States v. $8,221,877.16 in United States Currency,* 148 F.Supp.2d 427, 432–33 (D.N.J.2001) (reasoning that the claimant's "statement under oath, coupled with the [g]overnment's allegations that [the claimant] controlled the seized funds, convinces the [c]ourt that [the c]laimants have a sufficient interest in the seized funds" to establish standing), *rev'd on other grounds,* 330 F.3d 141 (3d Cir.2003); *United States v. $68,580.00 in U.S. Currency,* 815 F.Supp. 1479, 1481 (M.D.Ga.1993) (reading together the claimant's claim of ownership and the federal agent's admission that the claimant "owned the money" to establish statutory standing over the *res* ); *United States v. Forfeiture, Stop Six Center,* 794 F.Supp. 626, 632 (N.D.Tex. 1992) (determining that the government's allegation of the claimant's involvement

with the seized *res* to be sufficient to establish standing).

In the case at bar, the government alleges that it seized funds in the amount of $41,041.86 from several bank accounts "in the name of LATONYA CURTIS," the claimant. Compl. at 2. Furthermore, the government acknowledges that the FBI seized a $50.00 money order "in connection with the execution of a search warrant of claimant LATONYA CURTIS's residence." *Id.* at 2. These allegations coupled with the claimant's affirmation that she is the sole owner of the defendant funds satisfies Rule C(6) by allowing other interested parties to "reasonably . . . define the extent of the interest claimed to determine the viability of [the][c]laimant's right to defend the action." *See $40,000 in U.S. Currency,* 763 F.Supp. at 1427; *see also U.S. Currency, $81,000.00,* 189 F.3d at 37; *$38,570 U.S. Currency,* 950 F.2d at 1112–113; *$8,221,877.16 in United States Currency,* 148 F.Supp.2d at 432–33; *$68,580.00 in U.S. Currency,* 815 F.Supp. at 1481; *Forfeiture, Stop Six Center,* 794 F.Supp. at 632. As a result, the court need not determine which strand of judicial thinking it must apply in resolving the issue of standing because the claimant's verified claim satisfies either line of precedent. The court, therefore, concludes that the claimant's verified claim satisfies the mandates of Rule C(6) and denies the government's motion to strike.[13] FED. R. CIV. P. SUPP. R. C(6); *One 1990 Mercedes Benz 300CE,* 926 F.Supp. at 4.

### 3. Breakdown in the Adversarial Process

At this juncture, the court gives pause to consider the tangled web that this case has become, focusing particularly on the adversaries' lack of diligence in accurately and comprehensively addressing legal precedent. Indeed, if the claimant or, for that matter, the plaintiff[14] discussed the legal precedent addressed herein, the adversarial process would have saved the court from issuing its June 18, 2002 ruling and, consequently, would have prevented the court from having to reconsider that ruling. But alas, this breakdown in the adversarial process has left the court's prior decisions vulnerable to its own scrutiny.

As the D.C. Circuit has recognized, a fundamental premise of our adversarial system is that courts do not sit as self-selected forums of "legal inquiry and research, but essentially as arbiters of legal questions presented and argued by the parties before them." *Carducci v. Regan,* 714 F.2d 171, 177 (D.C.Cir.1983) (*cited in Tom v. Heckler,* 779 F.2d 1250, 1259–60 (7th Cir.1985) (Posner, J., dissenting)). This court, like any court, relies on the adversarial system to present relevant and appropriate issues to ensure just and fair results in the cases before it. The mere fact that a litigant is proceeding *pro se* should not displace this court's reliance on the adversarial system. Indeed, while courts frequently afford *pro se* litigants considerable latitude, the court is reluctant to stretch this accommodation so far as to

---

**13.** The liberal construction afforded to *pro se* filings by our court of appeals further buttresses the court's decision to recognize the claimant's standing. *See Sparrow v. United Air Lines Inc.,* 216 F.3d 1111 (D.C.Cir.2000) (recognizing that courts may relax procedural requirements governing civil actions involving *pro se* litigants); *see also Moore v. Agency for Int'l Dev.,* 994 F.2d 874, 876 (D.C.Cir.1993) (noting that *pro se* litigants "are allowed more latitude than litigants represented by counsel to correct defects in . . . pleadings").

**14.** The plaintiff failed to cite any law supporting its blanket assertion that the claimant has "indisputably failed to comply with . . . Rule C(6) by failing to file a verified claim setting forth an interest in the defendant funds . . ." Pl.'s Opp'n at 8.

allow such a litigant to wholly abandon his or her role in the adversarial system simply because she is proceeding *pro se*.[15] "Unlike the Emperor Nero, litigants cannot fiddle as Rome burns. A party who sits in silence ... does so at his [or her own] peril." *Vasapolli v. Rostoff*, 39 F.3d 27, 36 (1st Cir.1994).

### B. The Plaintiff's Requests for Default Judgment and a Decree of Forfeiture

The government's remaining requests for relief require little discussion, for the allowance of such relief depends on a favorable ruling on the government's motion to strike the claimant's claim. Because today's ruling denies the government's motion to strike, it naturally follows that the court must deny the government's pendent requests for default judgment and a decree of forfeiture.

### IV. CONCLUSION

For all of the foregoing reasons, the court denies the plaintiff's motion to strike and requests for entry of default judgment and a decree of forfeiture. An order directing the parties in a manner consistent with this Memorandum Opinion is separately and contemporaneously issued this *29th* day of January 2004.

---

15. The D.C. Circuit's indulgent treatment of *pro se* litigants "does not constitute a license for a plaintiff filing *pro se* to ignore the Federal Rules of Civil Procedure." *Moore v. Agency for Int'l Dev.*, 994 F.2d 874, 876 (D.C.Cir. 1993) (*citing Jarrell v. Tisch*, 656 F.Supp. 237, 239 (D.D.C.1987) (Penn, J.)).